**James REICHERT, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (DOLLAR TREE STORES/DOLLAR EXPRESS AND SPECIALTY RISK SERVICES, INC.), Respondents.**

Commonwealth Court of Pennsylvania.

Argued Oct. 10, 2013.

Decided Nov. 8, 2013.

Reargument Denied Jan. 3, 2014.

James B. Mogul, Bala Cynwyd, for petitioner.

Andrea Weaver, Media, for respondents.

BEFORE: BROBSON, Judge, McCULLOUGH, Judge (P.), and FRIEDMAN, Senior Judge.

OPINION BY Judge BROBSON.

Petitioner James Reichert (Claimant) petitions for review of an order of the Workers' Compensation Appeal Board (Board). The Board affirmed the Workers' Compensation Judge's (WCJ) grant of Dollar Tree Stores, Inc.'s (Employer) petition to modify benefits based on a labor market survey. For the reasons set forth below, we now affirm.

On April 2, 2001, Claimant suffered a work injury while employed as a truck driver for Employer. (Certified Record (C.R.), Notes of Testimony (N.T.), December 18, 2009, at 8.) On March 30, 2009, Employer filed a modification petition, alleging that as of March 10, 2009, "work [was] generally available to [Claimant] within his vocational and physical capabilities." (Reproduced Record (R.R.) at 4a–6a.) Claimant filed a timely answer, specifically denying Employer's allegations. (R.R. at 8a.) The matter was assigned to the WCJ.

At the hearing before the WCJ, Employer presented the deposition testimony of its district manager, Gerald Joka. (*Id.* at 216a.) Mr. Joka testified that although he has been with Employer for thirty-four years, he has only been a district manager for about eight years. (*Id.* at 217a.) He also testified that he is "in charge of sales, hiring, firing, pretty much everything to do with the ten local stores" in his district. (*Id.* at 216a–17a.) He acknowledged that he routinely is aware of available, open positions within his ten stores. (*Id.* at 217a–18a.) He testified that when Employer has open positions, it advertises them through a computer system that permits applicants to apply online. (*Id.* at 218a.) Further, addressing a question about whether he could describe "*general positions* within" Employer's retail stores, Mr. Joka testified that available positions include cashiers, stockers, assistant managers, managers and district managers. (*Id.* at 221a–22a (emphasis added).) He testified that "all of those positions are going to require pretty much a lot of physical movement.... Most of the day is spent lifting, merchandising, cleaning of the store, [and] doing recovery." (*Id.* at 222a.) Indeed, Mr. Joka testified that "[t]here's very little office work, probably for the manager itself a half hour as far as office work is concerned, no real office work for the cashiers or stockers, and very

minimal office work for assistant managers." (*Id.*)

Mr. Joka further testified that he reviewed Dr. David Baker's independent medical examination (IME) report, which restricted Claimant "to lifting in a light-duty capacity"—*i.e.*, "1 to 10 pounds frequently and 11 to 20 pounds occasionally."[1] (*Id.* at 220a–21a.) He testified that Employer did not have any open positions from July 28, 2008, until March 10, 2009, that could have comported with Dr. Baker's "extreme" limitations for Claimant.[2] (*Id.* at 223a (emphasis added).) Specifically, he testified that "whether it's cashiering or stocking, at some point the individual is going to have to be lifting more than the weight limits and requirements from [Dr. Baker]." (*Id.* at 223a–24a.)

On cross-examination, Mr. Joka testified that no one had ever asked him to look for a job for Claimant and that he was never contacted by Employer's vocational expert. (*Id.* at 232a.) He also acknowledged that Employer does not have actual written job descriptions for the retail store positions—*i.e.*, "cashiering, stocking, assistant manager and manager." (*Id.* at 233a.) Finally, he reiterated that office work at the stores was limited only to the managerial positions. (*Id.* at 238a.)

Next, Employer presented the deposition testimony of its vocational expert, John W. Dieckman. Mr. Dieckman testified that he was approved by the Pennsylvania Department of Labor and Industry (Department) "to conduct interviews to assess earning power." (*Id.* at 255a.) He also testified that he interviewed Claimant on August 31, 2008. (*Id.* at 256a.) Following the interview, Mr. Dieckman "*confirmed* with [Specialty Risk Services (SRS)], [that Employer] is not able to offer [Claimant] employment consistent with his limitations." (*Id.* at 259a (emphasis added).) He testified that typically, once he completes an initial evaluation of a claimant, he contacts the employer or its representatives "to determine if a job offer is possible or feasible." (*Id.*) Mr. Dieckman thereafter performed a vocational analysis for eleven positions, of which he sent nine to Dr. Baker for approval. (*Id.* at 261a.) He testified that Dr. Baker approved the submitted positions for Claimant. (*Id.* at 262a–68a.)

On cross-examination, Mr. Dieckman admitted that he did not directly speak with Employer about possible job openings for Claimant prior to conducting a labor market survey. (*Id.* at 270a.) Rather, he spoke with SRS, Employer's third-party administrator, to assess job availability. (*Id.*)

In response, Claimant presented the testimony of his vocational expert, Gary A. Young, who is certified by the Department to conduct labor market surveys. (*Id.* at 373a–74a.) He testified that, on April 22, 2009, he performed a vocational evaluation of Claimant. (*Id.* at 377a–78a.) He testified that, in so doing, he reviewed Mr. Dieckman's labor market survey relating

---

1. Dr. Baker's IME report provides, in pertinent part, that Claimant can occasionally bend, squat, climb, kneel, push, pull, reach, crawl, overhead reach, and grasp. (R.R. at 211a.)

2. 34 Pa.Code § 123.301(b) provides in relevant part:

   The employer's obligation to offer a specific job vacancy to the employee commences when the insurer provides the notice to the employee required by section 306(b)(3) of the act (77 P.S. § 512(b)(3)) [, relating to notice of ability to return to work,] and shall continue for 30 days or until the filing of a Petition for Modification or Suspension, whichever is longer.

   Here, Employer issued the notice of ability to return to work on July 28, 2008, and filed the modification petition on March 10, 2009.

to Claimant. (*Id.* at 380a.) Disagreeing with Mr. Dieckman's conclusions, Mr. Young testified that the jobs in the labor market survey were inappropriate for Claimant because of Claimant's background. (*Id.* at 401a, 412a.)

Alternatively, Mr. Young testified that Mr. Dieckman did not contact Employer to inquire about open and available positions in Employer's retail stores prior to conducting the labor market survey. (*Id.* at 391a.) Indeed, Mr. Young opined that Mr. Dieckman had a "mandatory" duty to so inquire. (*Id.* at 391a–92a.) Mr. Young also testified that Employer has a number of retail stores, warehouses, and offices, and that Mr. Dieckman should have inquired into whether an open and available job in each of those locations existed for Claimant. (*Id.* at 391a.) Mr. Young testified that he located fifty-six retail stores within a fifty-mile radius from Claimant's home address. (*Id.* at 393a.) Mr. Young used the number of retail stores to emphasize that Mr. Joka's testimony did not cover all fifty-six stores, but rather only the ten stores of which he was in charge. (*Id.* at 394a.) Finally, he testified that "*at the time of my evaluation*" of Claimant, Employer's website indicated that Employer was "actively recruiting for workers in various areas." (*Id.* at 392a (emphasis added).)

On cross-examination, Mr. Young acknowledged that Employer's website did not list any specific jobs. (*Id.* at 422a–23a.) He also acknowledged that he did not know the locations of Employer's corporate or regional offices. (*Id.* at 424a.) Mr. Young conceded that, given his condition, Claimant likely would not have been able "to drive a fifty-mile radius." (*Id.* at 425a.) Mr. Young opined that twelve of the fifty-six stores were within a twelve-mile radius of Claimant's home. (*Id.* at 426a.)

By decision and order dated October 28, 2010, the WCJ granted Employer's modification petition. (WCJ's decision at 18.) In so doing, the WCJ issued factual findings derived largely from the testimony of the witnesses. In particular, the WCJ found:

d. Employer's retail stores have cashier positions, stockers, assistant managers, managers and district managers. All of the positions require a lot of physical movement as most of the day is spent lifting, merchandising, cleaning the store and doing recovery. The office work is very little and amounts to about a half hour each day for the manager and less for the assistant managers. Virtually no time is spent sitting.

e. Employer has a return to work program in which they try to accommodate injured workers to bring them back to work with restrictions. Claimant's restrictions are too extreme. Therefore, Mr. Joka was not able to bring Claimant back to work into any open positions. At some point an employee has to lift more than that which Claimant is able to lift according to Dr. Baker.

f. Mr. Joka does not believe that he could have offered Claimant a position that fit within the restrictions provided by Dr. Baker.

(*Id.* at 3.)

The WCJ also included credibility determinations in his decision. Specifically, the WCJ found Mr. Joka's testimony to be credible and persuasive because:

Mr. Joka is fully aware of the jobs within Employer's stores and the physical demands of such jobs. Further, Mr. Joka is aware of how the jobs may be modified to meet the needs of disabled employees. Mr. Joka reviewed Dr. Baker's medical report and found that it would be difficult for Employer to offer a job which meets the restrictions im-

posed by Dr. Baker. All of the positions require a lot of physical movement as most of the day is spent lifting, merchandising, cleaning the store and doing recovery. Virtually no time is spent sitting. Mr. Joka's testimony regarding the fact that Employer would not have had an open position for Claimant between the time period of July 28, 2008 and March 10, 2009 which fit within Claimant's restrictions as provided by Dr. Baker is credible and accepted as fact. Mr. Joka's testimony regarding the lack of jobs Employer had that fit within Claimant's restrictions is credible and persuasive.

(*Id.* at 16.) Further, the WCJ found Mr. Dieckman's testimony to be competent, credible, and persuasive. The WCJ, however, found Mr. Young's testimony to be not credible. Particularly, the WCJ noted that "Mr. Young did not record any of his communications or contact information of the people he contacted at the various employers. Further, [he] contacted employers after Mr. Dieckman's labor market survey was complete and much after the jobs were identified as being available." (*Id.*) He also noted:

Mr. Young initially testified that he went to Employer's website and found that Employer was recruiting workers in various areas. He did not visit the website until sometime between April 22, 2009 and April 29, 2009. Mr. Young implied that Employer could have offered a position to Claimant. However, on cross-examination it was discovered that Mr. Young did not actually know what positions Employer was recruiting for on its

website nor did he know the locations of the jobs.

(*Id.* at 16–17.) Based on his findings, the WCJ concluded that Employer sustained its burden to prove that, between July 28, 2008 and March 10, 2009, it had no particular job openings that fell within Claimant's medical restrictions. (*Id.* at 17.)

Claimant appealed the WCJ's decision to the Board, challenging the WCJ's findings of fact and conclusions of law. In particular, Claimant disagreed with the WCJ's conclusion that Employer had met its burden of proof. The Board, however, affirmed the WCJ's decision. In so doing, it concluded that "Mr. Joka's credible testimony that there would be no position available with [Employer] within Claimant's work restrictions as indicated by Dr. Baker supports [Employer's] *prima facie* burden of proving that there were no suitable and available job positions with [Employer]." (Board's opinion at 4.) Claimant petitioned this Court for review.

On appeal,[3] Claimant argues that the Board erred in concluding that Employer complied with Section 306(b)(2) of the Workers' Compensation Act (Act),[4] and Section 123.301 of the Department's regulations.[5] Claimant argues that the Board should have determined that Employer did not meet its *prima facie* burden of proof, because it failed to establish the absence of open and available positions at Employer's retail stores. Also, Claimant argues that Employer's vocational expert, Mr. Dieckman, failed to contact Employer to determine whether Employer had any open and available positions for Claimant *prior* to

---

**3.** Our scope of review in a workers' compensation appeal is limited to determining whether an error of law was committed, whether constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

**4.** Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 512(2), added by Section 4 of the Act of June 24, 1996, P.L. 350 (Act 57).

**5.** 34 Pa.Code § 123.301.

conducting the labor market survey. Claimant further argues that Mr. Dieckman's failure to contact Employer ran afoul of the requirements of Act 57, and, as a result, the labor market survey must be declared void *ab initio.*

Section 306(b)(2) of the Act provides, in pertinent part, that "[i]f the employer has a specific job vacancy the employe is *capable* of performing, the employer *shall* offer such job to the employe." (Emphasis added.) Moreover, Section 123.301 of the Department's regulations provides, in part:

(a) For claims for injuries suffered on or after June 24, 1996, *if a specific job vacancy exists* within the usual employment area within this Commonwealth with the liable employer which the employee is *capable of performing,* the employer shall offer that job to the employee prior to seeking a modification or suspension of benefits based on earning power.

. . . .

(c) The employer's duty under subsections (a) and (b) may be satisfied if the employer demonstrates facts which may include the following:

(1) The employee was notified of a job vacancy and failed to respond.

(2) A specific job vacancy was offered to the employee, which the employee refused.

(3) The employer offered a modified job to the employee, which the employee refused.

(4) *No job vacancy exists within the usual employment area.*

. . . .

(f) If the employer has presented evidence that no job vacancy exists, the *employee may rebut* the employer's evidence by demonstrating facts which may include the following:

(1) During the period in which the employer has or had a duty to offer a specific job, the employer *is or was actively recruiting for a specific job vacancy* that the employee is capable of performing.

(2) During the period in which the employer has or had a duty to offer a specific job, the employer *posted or announced the existence of a specific job vacancy,* that the employee is capable of performing, which the employer intends to fill.

(Emphasis added.)

■ Based on the foregoing provisions of the Act and departmental regulations, it is well settled that

to prevail in seeking a modification of benefits, an employer must either: (1) offer to a claimant a specific job that it has available, which the claimant is capable of performing, or (2) establish 'earning power' through expert opinion evidence including job listings with employment agencies, agencies of the [Department], and advertisement in a claimant's usual area of employment.

*South Hills Health Sys. v. Workers' Comp. Appeal Bd. (Kiefer),* 806 A.2d 962, 966 (Pa.Cmwlth.2002) Interpreting Section 306(b)(2) of the Act and Section 123.301 of the Department's regulations, however, we have held that an employer does *not* have the burden to prove the *non-existence* of available work at its own facility as a necessary element of the modification petition. *Rosenberg v. Workers' Comp. Appeal Bd. (Pike Cnty.),* 942 A.2d 245, 251 (Pa.Cmwlth.2008) (emphasis added); *see also Kleinhagan v. Workers' Comp. Appeal Bd. (KNIF Flexpak Corp.),* 993 A.2d 1269, 1275 (Pa.Cmwlth.2010) (affirming our holding in *Rosenberg* ). Rather, a claimant may present evidence that " '[d]uring the period in which the employer ... had a duty to offer a specific job,' " the employer

had a specific job vacancy that it intended to fill that the claimant was capable of performing. *Id.* (quoting 34 Pa.Code § 123.301(f)(2)). The burden then shifts to the employer to rebut the claimant's evidence. *Rosenberg,* 942 A.2d at 251.

■ We first disagree with Claimant's contention that Employer failed to meet its *prima facie* burden. Here, although Employer does not have a burden to prove the non-existence of an open and available job, the undisputed facts indicate that Employer did not have any available positions within its retail stores that fell within Claimant's medical restrictions. In fact, Mr. Joka, Employer's district manager, credibly testified that all of Employer's retail stores featured the same positions— *i.e.,* cashiers, stockers, assistant managers, and managers.[6] (R.R. at 221a–22a.) Further, Mr. Joka testified that all of those positions demanded activities that exceeded Claimant's medical restrictions. (*Id.* at 223a.–24a.) As a result, Mr. Joka testified that Employer did not have any open positions for Claimant from July 28, 2008, through March 10, 2009. (*Id.* at 223a.) Additionally, we note that Employer's vocational expert, Mr. Dieckman, testified that he confirmed with SRS that Employer was unable "to offer [Claimant] employment consistent with his limitations." (*Id.* at 259a.) Based on the credible testimonies of its district manager and vocational expert, Employer presented sufficient evidence to establish that it did not have an open and available position for Claimant. Our inquiry, however, does not end here.

Once an employer has presented evidence that it did not have any available position, a claimant may rebut that evidence by facts demonstrating that "[d]uring the period in which the employer has or had a duty to offer a specific job, the employer *is or was actively recruiting for a specific job vacancy* that the employee is capable of performing" or "the employer *posted or announced the existence of a specific job vacancy,* that the employee is capable of performing, which the employer intends to fill." 34 Pa.Code § 123.301(f) (emphasis added).

■ Here, Claimant did not establish by evidence that Employer was actively recruiting for a specific job vacancy or that Employer had posted the existence of a specific job vacancy. Specifically, Claimant's vocational expert, Mr. Young, merely testified that Employer was recruiting for various positions on its website. (R.R. at 392a.) The WCJ, however, found Mr. Young's testimony to be not credible, because Mr. Young "did not visit the website until sometime between April 22, 2009 and April 29, 2009," which was after the filing of the modification petition. (WCJ's decision at 16–17.) More important, the WCJ found that "Mr. Young did not actually know what positions Employer was recruiting for on its website nor did he know the locations of the jobs." (*Id.*) Based solely on Mr. Young's incredible testimony, we conclude that Claimant failed to rebut Employer's evidence that it did not have any available positions for Claimant.[7]

---

6. Determinations as to evidentiary weight and credibility are solely for the WCJ as factfinder. *Cittrich v. Workmen's Comp. Appeal Bd. (Laurel Living Ctr.),* 688 A.2d 1258, 1259 (Pa.Cmwlth.1997). The WCJ is "free to accept or reject the testimony of any witnesses, including a medical witness, in whole or in part. As such, determinations as to witness credibility and evidentiary weight are not sub-

ject to appellate review." *O'Neill v. Workers' Comp. Appeal Bd. (News Corp. Ltd.),* 29 A.3d 50, 56 n. 3 (Pa.Cmwlth.2011) (citations omitted).

7. We observe that Claimant failed to proffer any evidence demonstrating that he indeed was *capable of performing* any of the jobs available at Employer's retail stores that did

Finally, to the extent Claimant argues that Mr. Dieckman was required to contact Employer about open and available positions at its retail stores that Claimant was capable of performing *prior* to conducting the labor market survey, we must disagree. We note that Claimant did not cite to any legal authority for the proposition that a vocational expert is prohibited from conducting a labor market survey, unless he first contacts the liable employer to determine whether it has any open and available positions for a claimant. Indeed, our review of relevant decisional law, the Act, and the Department's regulations fails to find support for that proposition. We, therefore, cannot conclude that Mr. Dieckman was required to contact Employer about open and available positions prior to conducting the labor market survey. Accordingly, the labor market survey was valid and proper.

### *ORDER*

AND NOW, this 8th day of November, 2013, the order of the Workers' Compensation Appeal Board is hereby AFFIRMED.

not comport with the restrictions outlined in      Dr. Baker's IME report.