# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Philadelphia Eagles, LLC,      :
         Petitioner      :
         :      No. 1103 C.D. 2015
       v.      :
         :      Submitted: December 11, 2015
Workers' Compensation Appeal      :
Board (Harris),      :
         Respondent      :

BEFORE:    HONORABLE DAN PELLEGRINI, President Judge[1]
             HONORABLE PATRICIA A. McCULLOUGH, Judge
             HONORABLE JAMES GARDNER COLINS, Senior Judge

## *OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH            FILED: May 6, 2016

       The Philadelphia Eagles, LLC (Employer) petition for review from the June 1, 2015 order of the Workers' Compensation Appeal Board (Board), which affirmed a Workers' Compensation Judge's (WCJ) decision denying Employer's petition to modify Antoine Harris's (Claimant) compensation benefits for failing to comply with section 306(b) of the Workers' Compensation Act (Act).[2]

---

[1] This case was assigned to the opinion writer on or before December 31, 2015, when President Judge Pellegrini assumed the status of senior judge.

[2] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §512.

**Facts and Procedural History**

The underlying facts are undisputed. On August 13, 2010, Claimant was injured during the course of his employment as a professional football player. By order dated December 12, 2011, a WCJ adopted the parties' stipulation of facts, acknowledging that Claimant had sustained a compensable injury to his right foot and awarded him total disability benefits at a rate of $845.00 per week. On May 12, 2012, Employer filed a petition to modify compensation benefits, alleging that Claimant possessed an earning power of at least $1,000.00 per week based on a labor market assessment. Claimant filed an answer denying the material allegations of Employer's petition and alleging that work is available with Employer which had not been offered to him pursuant to section 306(b) of the Act. The matter was assigned to a WCJ and a series of hearings were held.

Michael Smychynsky, Employer's vocational expert, testified that he performed a labor market analysis in Philadelphia, Pennsylvania and, based on the information he obtained, opined that Claimant had an expected earning capacity of $1,000.00 per week. Smychynsky stated that he reviewed a work-release report issued by James Beskin, M.D., issued Claimant a Notice of Ability to Return to Work, and contacted Employer to inquire whether it had any employment available that fit within the scope of the work release. Smychynsky testified that he was referred to Eric Rousch, Employer's Human Resources Coordinator, who executed an affidavit indicating that Employer did not have a specific job vacancy available for Claimant. (Reproduced Record (R.R.) at 9a-10a, 12a-14a.)

Smychynsky stated that he conducted a vocational interview with Claimant on March 16, 2012. During the interview, Smychynsky learned that Claimant maintained his permanent address in Lawrenceville, Georgia, and that he

had graduated from the University of Louisville with a degree in mass communication. Smychynsky also learned that Claimant wanted to use his degree for sports broadcasting or some other sports-related activity; however, Smychynsky noted that Claimant had no internships, post-graduate education, or training in sports broadcasting. Smychynsky explained that the only experience Claimant had other than playing professional football was charity work in Columbus, Ohio, where he operated a sports camp during the summer for approximately three-hundred children. (R.R. at 17a-20a.)

Smychynsky testified that he performed a labor market survey and identified eighteen jobs in the Philadelphia area that he believed would be vocationally appropriate for Claimant. Smychynsky noted that the employers he contacted were willing to provide Claimant with training and employment due to the fact that he possessed a college degree. He stated that he completed job analyses for five positions[3] and provided them to Dr. Beskin to determine whether the positions were physically suitable for Claimant. Smychynsky confirmed that Dr. Beskin approved the proposed jobs as physically suitable for Claimant. (R.R. at 21a-29a.)

Smychynsky opined that the eighteen jobs he identified were within Claimant's physical capabilities because most of the positions were sedentary and his understanding of Dr. Beskin's work release was that Claimant could engage in virtually any position except for one which would require running, push-off skills, or quick changes of direction. He stated that the identified jobs were within Claimant's

---

[3] Smychynsky explained that the job analyses he provided to Dr. Beskin for review were: a dispatcher position with the University of Pennsylvania; a communications officer position with Philadelphia Community College; a communications officer position with Swarthmore College; a sales position with Access Security Corporation; and a sales representative position with Global Sports Publications. (R.R. at 26a.)

vocational capabilities because they are entry level positions that do not require previous experience and many of the positions prefer or require a college degree. (R.R. at 29a-31a.)

Smychynsky reviewed positions available with Employer and testified that they were not suitable for Claimant because most of the jobs were intern positions requiring the applicant to be within one year of graduation. He noted that Employer had a database manager position and a lead designer position available but opined that they were not suitable for Claimant because Employer requested a degree in quantitative business discipline and graphic design respectively, which Claimant did not possess. Smychynsky confirmed that Employer had a digital services coordinator position available but noted that it requested two to three years of digital or web-based experience. Similarly, Smychynsky stated that Employer had an e-commerce coordinator position available; however, it also required one to three years of specific experience. (R.R. at 31a-35a.)

Smychynsky testified that Employer had other jobs available, including a part-time event staff position, but noted that they required residence in the Philadelphia area. Smychynsky acknowledged that all the positions he identified in his labor market survey would require Claimant to reside in the Philadelphia region. Smychynsky explained that Employer did not have any positions available in Lawrenceville, Georgia, where Claimant maintains his permanent residence, and concluded that Employer's available positions were not suitable for Claimant because he did not meet the preferred requirements. He confirmed that Employer did not make any job offers to Claimant. (R.R. at 31a-35a, 46a-47a.)

Dr. Beskin, a board certified orthopedic surgeon specializing in foot and ankle orthopedics, testified that he performed an independent medical examination

4

(IME) of Claimant on January 16, 2012, opined that he had reached maximum medical improvement from his injuries, and stated that no significant ongoing care would be needed. Dr. Beskin explained that Claimant suffered a non-contact injury when he was running, made a cut, and felt a sudden, acute pain in his foot. He noted that Employer's team physician diagnosed Claimant with an injury to the Lisfranc portion of his ligament and, subsequently, a foot and ankle specialist recommended surgery, which was performed. (R.R. at 155a-60a.)

Dr. Beskin testified that there were no apparent complications from the surgery and that Claimant's recovery was fairly routine; however, he noted that Claimant complained of persistent pain or aching in the area of the injury and felt that the activities required in professional football exacerbated his symptoms. Dr. Beskin opined that Claimant would never be able to play professional football again, but explained that Claimant had reached maximum medical improvement status as of the date he performed the IME because no additional intervention would change the outcome of Claimant's condition and testified that he would place no restrictions on Claimant's ability to walk or climb stairs. Dr. Beskin further testified that Smychynsky provided him with five job analyses forms, that he reviewed all of the jobs set forth in the earning capacity assessment, and that he approved Claimant for the jobs because the symptoms Claimant described were related to high-energy situations such as running and cutting and none of the jobs required those types of activities. Dr. Beskin also opined that Claimant was physically able to perform the positions that were available with Employer. (R.R. at 161a, 165a-71a.)

Claimant testified that he was injured in 2010, has resided in Lawrenceville, Georgia, since 2009, and obtained a bachelor's degree in communications from the University of Louisville in 2004. Claimant stated that the

5

only job he had while in high school was at a hardware store performing manual labor for a single summer. Claimant also stated that he did not perform any work after he graduated from high school and before starting college but noted that he did assist his former basketball coach with a sports camp for a weekend during that period. Claimant further testified that the only job he performed during his college years was as a security guard for Churchill Downs for one week during a single summer. (R.R. at 205a-10a.)

Claimant further testified that he played for both the Tennessee Titans and Atlanta Falcons before signing with Employer in 2010. He stated that, during the period before signing with Employer, he did not perform any professional work outside of football. Claimant noted that he operates a nonprofit football camp for kids in Ohio but clarified that it is a volunteer activity and not a job. He testified that he created a limited liability company and received a grant from the National Football League to operate his camp. Claimant explained that his camp was a one-day summer camp, that it ran from 9:00 a.m. to 5:00 p.m., and that he operated the camp for two years. He further explained that he obtained insurance for over three-hundred kids; negotiated and procured equipment and facilities, such as venues and hotel rooms; marketed the camp, including designing logos and generating radio and social media advertisements; recruited volunteers and paid staff members; created a secondary plan; obtained sponsorships for food, beverages, clothing, and prizes; obtained and negotiated talent, i.e., celebrity coaches; and performed event planning, including booking and coordinating flights, hotels, dinners, and various functions. (R.R. at 210a-15a.)

Claimant also testified that he has real estate experience; specifically, he stated that he purchased a property for his parents in Ohio but noted that he does not

6

charge them to reside there. He also stated that he purchased a property in Atlanta for rental purposes but clarified that he has never had any tenants. Claimant further testified that he has not performed any other business ventures, held any job for any employer, or completed any unpaid internships since his injury in 2010. However, he indicated that he has performed volunteer work on two occasions since his 2010 injury and added that he is currently pursuing a license to sell insurance. (R.R. at 215a-20a.)

Claimant confirmed that he resided in temporary housing during his tenure with Employer and never actually relocated to Philadelphia. He stated that he never looked for work in Philadelphia after his injury in 2010 but noted that he may have stayed in Philadelphia if there was an opportunity to do so. Claimant testified that he wears orthotics in his shoes, occasionally experiences pain if he is on his feet for a long period of time, and has performed physical therapy for strengthening and conditioning the muscles in his foot. He acknowledged that he felt some improvement in his foot and that his condition has not changed since the IME. (R.R. at 221a-27a.)

Claimant testified that he does not receive and has not applied for any benefits other than workers' compensation. He stated that he has not done any self-employment activities and has not applied for any jobs other than the insurance program since 2010 because he does not have adequate experience. Claimant confirmed that he reviewed the job analyses forms Smychynsky provided to Dr. Breskin and opined that he would likely be able to perform them without issue. He acknowledged that he never applied for a job with Employer since his injury in 2010 and testified that Employer did not make any job offers to him or advise him of any

7

available openings. He further testified that he would consider moving to Philadelphia if he was offered a good job. (R.R. at 228a-33a, 238a-39a.)

Kristie Pappal (Pappal) testified that she has been Employer's Director of Human Resources for approximately six years and is responsible for overseeing Employer's hiring. She stated that Employer is a very high profile organization that receives resumes and inquires year-round regardless of whether a position is available and testified that, on average, a posted position receives over one-thousand applications. Pappal explained that Employer can be very selective in its hiring because it receives a high number of applicants for every position, previous customer service experience is a baseline for an applicant's consideration, and workers' compensation claimants receive no hiring preference. (R.R. at 246a-48a, 254a.)

Pappal further testified that Employer compiled a list of jobs that were available during the period between January 25, 2012, and May 12, 2012. She reviewed the positions and stated that the only applicants that are considered for Employer's internship positions are current college or graduate school students or students who have graduated in the past twelve months and that Claimant would not be eligible for any internship positions. Pappal also stated that Employer does not currently have, nor has it ever had, positions available in the Lawrenceville, Georgia, or Atlanta, Georgia, areas. (R.R. at 248a-49a.)

Pappal explained that Claimant was not qualified for any of Employer's available positions because he did not have the preferred level of experience. Specifically, Pappal stated that Claimant was not qualified because: he did not have previous experience using online catalogues or using online analytics to process merchandise orders preferred for an e-commerce merchandise coordinator position; he did not have previous producing and editing experience necessary for a position as

an Eagles Television Network producer; he did not have experience handling large scale event logistics preferred for a position as an events coordinator; and he did not have the customer service experience necessary for a sales associate or game-day staff position. Pappal testified that previous experience is the most important factor for Employer when considering applicants and confirmed that Employer never contacted Claimant to advise him of any potential job openings. (R.R. at 250a-52a, 262a, 264a.)

By decision and order circulated October 25, 2013, the WCJ denied Employer's petition for modification of compensation benefits. The WCJ found Smychynsky and Pappal's testimony indicating that Claimant was not qualified for a marketing coordinator position unpersuasive and not credible. (WCJ's Finding of Fact No. 9a.) Specifically, the WCJ noted that Pappal's testimony regarding Claimant's lack of experience handling large scale event logistics was factually wrong; Pappal incorrectly concluded that Claimant does not possess a college degree; and the marketing coordinator job description was not attached to Smychynsky's deposition. Accordingly, he determined that Claimant had the educational and vocational capacity to perform the marketing coordinator position and concluded that Employer failed to comply with section 306(b)(2) of the Act because it did not notify or consider Claimant for the marketing coordinator position and, therefore, could not rely on the labor market survey.

Employer appealed the WCJ's decision to the Board, arguing that: the WCJ's findings were not supported by sufficient, competent evidence because Employer was only obligated to offer Claimant an available position within reach of the Claimant's current residence; the WCJ failed to apply relevant regulations providing that an employer's obligation to offer a specific job vacancy is applied

9

consistent with the employer's usual business practice; the WCJ erred in using his opinion as a basis to find that Claimant was qualified for the marketing coordinator position in the absence of expert testimony; and the WCJ erred when he issued a decision without identifying and explaining why he rejected certain evidence.

The Board affirmed the WCJ, reasoning that, although the language in *Motor Coils MFG/WABTEC v. Workers' Compensation Appeal Board (Bish)*, 853 A.2d 1082 (Pa. Cmwlth. 2004), indicates that the offered job must be within reach of the claimant's residence, a literal application of the language ignores the purpose of the decision, i.e., to ensure a claimant is offered a position that he is capable of performing. The Board conceded that the WCJ may have exceeded his authority when he determined that Claimant was capable of performing the marketing coordinator position; however, it determined that he ultimately came to the correct conclusion. The Board noted that Employer bears the burden to prove the unavailability of a position when Claimant raises the availability of a suitable job and, because a WCJ is free to accept or reject the testimony of any witness and rejected Employer's witnesses' testimony, it reasoned that Employer failed to meet its burden to prove that Claimant could not perform the marketing coordinator position.

On appeal to this Court,[4] Employer argues that the WCJ erred in rejecting its uncontroverted evidence that Claimant was not qualified to fill its specific job vacancy pursuant to its usual business practices. Employer also argues that the WCJ erred when he determined that Employer did not comply with section 306(b) of the Act because it did not offer Claimant a job in Pennsylvania.

---

[4] Our standard of review in workers' compensation appeals is limited to determining whether an error of law was committed, constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence. *Fruehauf Trailer Corporation v. Workers' Compensation Appeal Board (Barnhart),* 784 A.2d 874, 876 n.2 (Pa. Cmwlth. 2001).

**Discussion**

An employer seeking to modify a claimant's compensation benefits must either:

> (1) offer to the claimant a specific job that it has available, which the claimant is capable of performing, or (2) establish "earning power" through expert opinion evidence including job listings with employment agencies, agencies of the Department of Labor and Industry, and advertisement in a claimant's usual area of employment.

*Reichert v. Workers' Compensation Appeal Board (Dollar Tree Stores/Dollar Express and Specialty Risk Services, Inc.)*, 80 A.3d 824, 829 (Pa. Cmwlth. 2013) (citation omitted).

Pursuant to the Act:

> "Earning power" shall be determined by the work the employe is capable of performing and shall be based upon expert opinion evidence which includes job listings with agencies of the department, private job placement agencies and advertisements in the usual employment area. . . . If the employe does not live in this Commonwealth, then the usual employment area where the injury occurred shall apply. *If the employer has a specific job vacancy the employe is capable of performing, the employer shall offer such job to the employe. . . .*

77 P.S. §512 (emphasis added).

Additionally, section 123.301 of the regulations of the Bureau of Workers' Compensation (Bureau) provides that:

> (a) For claims for injuries suffered on or after June 24, 1996, if a specific job vacancy exists within the usual employment area within this Commonwealth with the liable employer, which the employee is capable of performing, *the employer shall offer that job to the employee prior to*

11

*seeking a modification or suspension of benefits based on earning power.*

\* \* \*

(c) The employer's duty under subsections (a) and (b) may be satisfied if the employer demonstrates facts which may include the following:

\* \* \*

(4) *No job vacancy exists within the usual employment area.*

\* \* \*

(e) The employer's duty under subsections (a) and (b) does not require the employer to hold a job open for a minimum of 30 days. Job offers shall be made *consistent with the employer's usual business practice. . . .*

34 Pa. Code §123.301(a)-(e) (emphasis added).

Employer argues that the WCJ erred when he failed to apply Employer's usual business practices in assessing Pappal's determination that Claimant was not qualified for any of its specific job vacancies that were available during the relevant period.

Section 123.301(e) of the Bureau's regulations requires that job offers are made "consistent with the employer's usual business practice." Here, Pappal testified that Employer is a high profile organization, receives over one-thousand applications for any posted position, and is very selective when making hiring decisions. Pappal also testified that customer service is a necessary prerequisite for any applicant's consideration and that Claimant was not qualified for an events coordinator position because he did not have experience handling large scale event logistics. Moreover, Smychynsky testified that Claimant did not meet any of the

12

requirements for Employer's available positions because he lacked necessary experience and did not reside in the Philadelphia area. However, the WCJ disagreed and concluded that Claimant was qualified for a marketing coordinator position with Employer. He rejected Employer's contrary testimony as not credible because: Pappal's testimony regarding Claimant's inexperience handling large-scale events was factually wrong; Pappal incorrectly concluded that Claimant does not possess a college degree; and the marketing coordinator job description was not attached to Smychynsky's deposition.

It is well settled that the WCJ "has complete fact-finding discretion as to the credibility of witnesses and evidentiary weight, and such findings will not be disturbed if supported by substantial evidence." *Harding v. Workers' Compensation Appeal Board (Arrowhead Industrial)*, 706 A.2d 896, 899-900 (Pa. Cmwlth. 1998). A WCJ's "finding can only be reversed if not supported by substantial, competent evidence or if arbitrary and capricious."[5] *Pritchett v. Workers' Compensation Appeal Board (Stout)*, 713 A.2d 1214, 1217 (Pa. Cmwlth. 1998). Indeed, we have previously held that a court may overturn a WCJ's credibility determination "only if it is arbitrary and capricious or so fundamentally dependent on a misapprehension of material facts, or so otherwise flawed, as to render it irrational." *Casne v. Workers' Compensation Appeal Board (Stat Couriers, Inc.)*, 962 A.2d 14, 19 (Pa. Cmwlth. 2008). This Court has stated that "[t]he meaning of arbitrary includes 'founded on prejudice or preference rather than on reason or fact.'" *Id*. at 19 n.5 (citation omitted). Our Supreme Court has held that a capricious disregard of evidence exists

---

[5] "Substantial evidence has been defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Bethenergy Mines, Inc. v. Workmen's Compensation Appeal Board (Skirpan)*, 612 A.2d 434, 436 (Pa. 1992) (citation omitted).

"when there is a willful and deliberate disregard of competent testimony and relevant evidence which one of ordinary intelligence could not possibly have avoided in reaching a result." *Station Square Gaming L.P v. Pa. Gaming Control Board*, 927 A.2d 232, 237 (Pa. 2007). Similarly, section 422(a) of the Act provides that "[u]ncontroverted evidence may not be rejected for no reason or for an irrational reason." 77 P.S. §834.

As to the finding that Claimant did not have a college degree, it is clear that Pappal did not testify that Claimant did not possess a college degree. Rather, she expressly stated that Claimant did have a college degree.[6]

As to the WCJ's finding that Employer's testimony was not credible, specifically, that Smychynsky's expert testimony was deficient because a job description for the marketing coordinator position was not attached to his deposition, the basis for this finding is erroneous. Although the job description was not attached to Smychynsky's deposition, the marketing coordinator position was included in the list of jobs that he was asked to review. (R.R. at 45a, 49a-50a, 69a.)

Regarding the WCJ's finding that Pappal's testimony was factually wrong because he determined that Claimant had sufficient experience handling large-scale events such that he was capable of performing the marketing coordinator

---

[6] Q: [Claimant] does have a degree, correct?

A: Again, based on his deposition, yes. If I saw his resume, I would not know that he has a degree.
(R.R. at 259a-60a.)

Q: Let's look further down [the] page at the qualifications. He does have a Bachelor's degree, does he not?

A: Based on his deposition, I understand that. Looking at a resume I would not know that.
(R.R. at 260a-61a.)

14

position, the Board correctly acknowledged that this analysis was improper because the WCJ exceeded his authority when he made his determination solely based on Claimant's testimony and resume. *See also* 77 P.S. §512(2) ("'Earning power' shall be determined by the work the employe is capable of performing and shall be based upon expert opinion evidence . . . ."). It is undisputed that Claimant operated a one-day summer camp on two occasions for approximately three-hundred kids. However, this evidence is not sufficient expert evidence to serve as a basis for determining what work Claimant is capable of performing. Although the Board affirmed the WCJ on other grounds because it determined that credibility determinations are solely the WCJ's prerogative, we articulated above why those findings were unsupported by the record and, consequently, arbitrary and capricious.

Accordingly, the Board's order is reversed. The matter is remanded to the Board with specific instructions to remand to the WCJ to determine whether Claimant was qualified for any available positions with Employer based on an accurate reading of the record.[7]

_____
PATRICIA A. McCULLOUGH, Judge

---

[7] Based on the foregoing disposition, we will not address Employer's additional argument that the WCJ erred when he determined that Employer did not comply with section 306(b) of the Act because it did not offer Claimant a job in Pennsylvania.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Philadelphia Eagles, LLC,       :
           Petitioner       :
                             :   No. 1103 C.D. 2015
         v.                 :
                             :
Workers' Compensation Appeal       :
Board (Harris),                     :
           Respondent       :

## *ORDER*

AND NOW, this 6th day of May, 2016, the June 1, 2015 order of the Workers' Compensation Appeal Board (Board) is reversed. The matter is remanded to the Board with specific instructions to remand to the Workers' Compensation Judge for further findings consistent with this opinion.

Jurisdiction relinquished.

 

_____
PATRICIA A. McCULLOUGH, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Philadelphia Eagles, LLC, : 
                Petitioner : 
                 : 
          v. : No. 1103 C.D. 2015
                 : Submitted: December 11, 2015
Workers' Compensation Appeal : 
Board (Harris), : 
                Respondent : 


BEFORE:    HONORABLE DAN PELLEGRINI, President Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE JAMES GARDNER COLINS, Senior Judge


<u>OPINION NOT REPORTED</u>


DISSENTING OPINION BY
PRESIDENT JUDGE PELLEGRINI          FILED: May 6, 2016


       The issue in this case is whether the Employer satisfied its burden to modify Antoine Harris's (Claimant) compensation benefits based on a labor market survey conducted in accordance with Section 306(b) of the Workers' Compensation Act (Act).[1] This provision allows an employer to modify compensation benefits based on a labor market survey that, considering the employee's residual productive skill, education, age and work experience, determines what type of substantial gainful employment exists in the usual employment area and, based on that survey, determines the claimant's earning power and modifies compensation accordingly.

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §512.

Section 306(b)(2) of the Act, though, provides that "[i]f the employer has a specific job vacancy the employe is capable of performing, the employer shall offer such job to the employe." If it does not, benefits may not be modified. I respectfully dissent because the majority has incorrectly found that an employee-claimant has to have the qualification exactly listed on the employer's job description, not just that he must be capable of performing such a job.

In this case, the Workers' Compensation Judge (WCJ) accepted Philadelphia Eagles, LLC's (Employer) labor market survey that would allow for Claimant's employment in various positions, including a marketing coordinator position, with a starting wage of approximately $1,000 per week. The WCJ rejected, however, the testimony of Employer's Director of Human Resources that Claimant did not meet the requirements of the posted positions, including that of a "ticket taker" or a "tour guide," because he had no customer service experience. Based on the positions that Employer's labor market survey found that Claimant was capable of performing, the WCJ found that Claimant was capable of performing the market coordinator position and the WCJ denied Employer's request to modify benefits.

The majority reverses the WCJ's decision because it finds the WCJ's rejection of Employer's Director of Human Resources and the person who conducted the labor market survey testimonies to the extent that Claimant was not capable of performing the job to be unpersuasive and not credible and was arbitrary, capricious and unsupported by the record. It so found because the WCJ based his credibility findings on the fact that the Director of Human Resources testified that Claimant did not have a college degree when she, in fact, testified that Claimant did have a college

degree; that the person that conducted the labor market survey was deficient because a job description for the marketing coordinator position was not attached to his deposition when the marketing coordinator position was included in the list of jobs that he was asked to review; and the WCJ's finding that the Director of Human Resources' testimony was wrong because Claimant had experience handling large-scale events.

The WCJ did make an error in finding that Employer's Director of Human Resources testified that Claimant did not have a college degree. However, the WCJ's finding that the person who conducted the labor market survey did not review the marketing coordinator position because it was not attached to his deposition is not so clear. Simply because it was included in the list of jobs he was asked to review does not mean that he did, especially when Employer's Director of Human Resources did not discuss the marketing coordinator positon in her testimony even though she specifically mentioned other positions. This is a matter for the WCJ to determine, not this court. As to whether he had experience handling large-scale events, it is undisputed that Claimant operated a one-day summer camp on two occasions for approximately 300 children. Whether that was sufficient experience is for the factfinder, in this case, the WCJ, to make.

None of the above is crucial, though, to the outcome because the fatal flaw in the majority's position is its assumption that if a claimant does not meet the exact description contained in the employer's job listing, an employer is not required to offer the job to the employee-claimant. That is not what the law provides. Under Section 306(b)(2) of the Act, a claimant is not required to be the best qualified person

for the position and to meet all the requirements in the job posting; all that this provision requires is that the employee-claimant be offered an available position that "the employe is capable of performing." In finding of fact #9a, the WCJ found that "the position of Philadelphia Eagles marketing coordinator was vacant and available ... and that [Claimant] had the educational and vocational capacity to perform this position."[2]

There is substantial competent evidence to support that finding, given that the person who conducted the labor market survey found that Claimant is capable of being a market coordinator, as well as evidence that he has organized events.

---

[2] The majority seems to take the position that an employer is free to be as selective as it wants to in filling the position. In making that argument, it relies on Section 123.301(e) of the Bureau of Workers' Compensation's regulations which provides:

> The employer's duty under subsections (a) and (b) does not require the employer to hold a job open for a minimum of 30 days. Job offers shall be made consistent with the employer's usual business practice. If the making of job offers is controlled by the provisions of a collective bargaining agreement, the offer shall be made consistent with those provisions.

34 Pa. Code §123.301(e).

As can be seen, this goes to how long "job offers" have to be held open; it does not *give carte blanche* to an employer to add "squishy" job requirements that are freely waivable, only acting as a shield to avoid its obligations under the Act and other laws. All that Section 306(b)(2) of the Act requires is that the person be "capable" of performing the job. Even if we were to accept the majority's interpretation of the regulations, "the power of an administrative agency to prescribe rules and regulations under a statute is not the power to make law, but only the power to adopt regulations to carry into effect the will of the Legislature as expressed by the statute." *Volunteer Firemen's Relief Association of the City of Reading v. Minehart*, 227 A.2d 632, 635-636 (Pa. 1967). When an agency adopts regulations at variance with the statute, the regulations, and not the statute, fall by the wayside. *See Xerox Corporation v. City of Pittsburgh*, 327 A.2d 206 (Pa. Cmwlth. 1974); *George A. Fuller Co. v. City of Pittsburgh*, 327 A.2d 191 (Pa. Cmwlth. 1974).

Moreover, neither the person who conducted the labor market survey nor the Director of Human Resources ever testified that Claimant was incapable of performing any of the positions – including the "ticket taker" position. Those positions had a salary range well above Claimant's presumed earning power of $1,000 a week. This does not show that the job required someone with more qualifications, only that they wanted someone that had more experience than Claimant.

Accordingly, for the foregoing reasons, I respectfully dissent.

_____
DAN PELLEGRINI, Senior Judge