# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Gary Koehler,                  :
              Petitioner       :
                 :
          v.             :    No. 3 C.D. 2017
                 :    Submitted: May 12, 2017
Workers' Compensation Appeal    :
Board (SEPTA),               :
              Respondent     :

BEFORE:     HONORABLE RENÉE COHN JUBELIRER, Judge
                  HONORABLE ANNE E. COVEY, Judge
                  HONORABLE JAMES GARDNER COLINS, Senior Judge

## OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**           **FILED: August 28, 2017**

Gary Koehler (Claimant) petitions for review of an Order of the Workers' Compensation Appeal Board (Board), dated December 6, 2016, that affirmed the decision of the Workers' Compensation Judge (WCJ) to grant Southeastern Pennsylvania Transportation Authority's (Employer) petition to modify compensation benefits. Claimant contends Employer did not satisfy its statutory burden of proving it did not have a position available for Claimant before relying on an earning power assessment. Claimant also argues Employer failed to produce sufficient medical evidence to support its petition. For the following reasons, we affirm.

Claimant worked for Employer as a transmission repair specialist until May 24, 2006, when he suffered a lumbar herniated disc injury during the course and scope of his employment. A Notice of Compensation Payable (NCP) was issued on June 9, 2006. Following an Independent Medical Examination (IME) conducted on May 15, 2014, Employer issued a Notice of Ability to Return to Work on July 1, 2014. On November 26, 2014, Employer filed a modification petition based on a labor market survey (LMS) showing that vocationally and physically appropriate work was generally available to Claimant.[1] On December 18, 2014, Claimant filed an answer, denying the averments in the modification petition.

The matter was assigned to a WCJ who held hearings on the petition. In support of its petition, Employer presented the deposition testimony of the vocational expert who conducted the LMS and the physician who performed the IME. The vocational expert testified that on September 3, 2014, she personally met with Claimant and learned about his previous job experiences and education level. During the meeting, Claimant informed her that he takes Percocet three times a day for pain as prescribed by his treating physician. The vocational expert did not review any records from Claimant's treating physician and instead relied upon a report by the IME physician, who authorized Claimant to return to light-duty work with a 20-pound lifting restriction. Additionally, the vocational expert contacted a representative from Employer to inquire as to whether any modified-duty positions were available with Employer. According to the vocational expert, the representative replied that Employer was not under a contractual duty to rehire

_____

[1] Employer previously filed a modification petition in 2006, which was denied.

2

Claimant and that Claimant was dropped from Employer's rolls after exhausting all of his leave in 2008.

Based on her interview with Claimant and the IME, the vocational expert identified seven available jobs within Claimant's physical and vocational capabilities. These jobs include an entry-level sales/customer service position with Vector Marketing; a service advisor at Ray Price; a front desk agent with Great Wolf Lodge; a telemarketer at Volt Payments; a picker at Cintas;[2] a delivery driver with Pizza Hut; and an entry-level picker at Corporate Resource Services. She created a LMS, in which she concluded, based on the identified jobs, that Claimant had an earning power between $320 and $800 per week.

The IME physician testified as follows. He reviewed Claimant's past medical history and performed an IME of Claimant on May 15, 2014. According to the IME physician, Claimant described his daily pain ranging from 2 to 4 on a scale of 10, which was predominantly in the right leg but occasionally in the left. A physical examination showed normal strength; however, his left extensor hallucis longus, the muscle that enervates the big toe, was not working. In addition, the examination showed some right-sided weakness of the peroneal and extensor hallucis longus muscle, and reflexes were absent at both ankles but were symmetric and present at both knees. He exhibited a negative straight leg raising test. After a discectomy at the L4-5 level in June 2006, Claimant described decreased leg and back pain. A repeat MRI performed in January 2007 showed interval improvement at the central disc herniation at L3-4, interval resolution of the disc herniation and extruded fragment at L4-5, and the L5-S1 level remained

---

[2] According to the LMS, a picker is responsible for fulfilling customer orders by picking merchandise that matches customer specifications.

unchanged. Based upon his examination, the history provided by Claimant, and a review of medical records, the IME physician believed Claimant could perform light-duty work. He completed a physical capacities worksheet indicating that Claimant could return to work with the following restrictions: 1-3 hours of standing, sitting, sitting/standing, walking, and driving; occasional bending at the waist, squatting at the knees, climbing stairs, reaching above the shoulder, kneeling and using feet for foot controls; no climbing ladders or crawling; no restrictions on upper extremities; and light lifting of 11-20 pounds. He testified that it is important for individuals with Claimant's condition to be able to switch positions every 1-3 hours and that based on his understanding of the physical requirements of the seven jobs, in his medical opinion, Claimant could perform all seven of the jobs listed in the LMS.

Claimant testified in opposition to the modification petition. He testified that he receives epidural steroid injections and takes three Percocets per day for pain, which he described as constant. He also testified that he reviewed the seven jobs suggested by the vocational expert with his treating physician, and neither he nor his treating physician believe that he is capable of performing any of them. Therefore, he did not apply for employment with any of the potential employers listed in the LMS. Claimant also testified that he believes a light-duty position is available with Employer because he previously worked such a position in 2006 after his surgery, albeit only for three days. He is not aware of any specific light-duty position available with Employer after this time.

Claimant also introduced the deposition testimony of his treating physician, who testified as follows. He testified that Claimant has paravertebral spasm consistently, presents with a positive straight leg raising test, and has poor quad

4

tone on the right lower extremity. According to the treating physician, poor quad tone and dorsal flexion weakness are evidence of a chronic damaged irritated nerve in the distribution of the right lower extremity. He diagnosed Claimant with L4-5 disc herniation, status post-surgery and chronic lumbar L5-S1 radiculopathy, all related to the 2006 work injury. In his opinion, Claimant's condition has remained roughly unchanged since he first started treating him in 2010. He testified that Claimant cannot sit or stand for any length of time but must shift positions constantly. In his opinion, Claimant is not able to perform any full-time work and should not lift more than 10 pounds. He also expressed concerns with Claimant driving because of his medication, as well as getting in and out of a motor vehicle on a continual basis. He agrees that Claimant could try some sedentary work if he is able to change positions frequently. Although he thought the position at Great Wolf Lodge was most helpful to Claimant, he did not believe that Claimant could perform it or any of the jobs listed in the LMS.

The WCJ found the vocational expert's testimony credible and based upon her testimony, that no work with Employer was available to Claimant.[3] In addition, the WCJ credited the IME physician's testimony in its entirety and rejected the testimony of Claimant's treating physician where it differed.[4] The WCJ also found the IME physician's explanation of the physical requirements of

---

[3] The WCJ also admitted, over Claimant's objection, a copy of a collective bargaining agreement between Employer and Claimant's previous union, which Employer introduced in rebuttal of Claimant's argument that it must offer him a light-duty position before seeking modification of his benefits. The WCJ found it substantiated the testimony of the vocational expert that Employer had no light-duty positions to offer Claimant.

[4] The WCJ offered an "alternative finding," in which he gave the treating physician "the benefit of the doubt" and found that Claimant could lift between 5 and 10 pounds. (WCJ Decision, Finding of Fact (FOF) ¶ 9.)

the Great Wolf Lodge job more credible than the treating physician's, and found Claimant could perform that position, which had an earning capacity of $320 per week. Based upon this finding, the WCJ modified Claimant's benefits accordingly.

The Board affirmed the WCJ, holding that Employer met its burden of proving that Claimant's earning power had increased by the credited testimonies of the vocational expert and IME physician, and that such credibility determinations are within the discretion of the WCJ. Though Claimant additionally argued to the Board that Employer failed to prove it had no available, suitable jobs within itself for Claimant, the Board ruled that the burden to prove that no such job existed never shifted to the Employer. The Board relied on this Court's decision in *Rosenberg v. Workers' Compensation Appeal Board (Pike County)*, 942 A.2d 245 (Pa. Cmwlth. 2008), for the proposition that "[i]t was Claimant's burden to raise the issue of a specific job availability within [Employer], with evidence, before the burden shifted to [Employer] to prove that such a job was offered to Claimant." (Board Op. at 7.) The Board found that although Claimant provided evidence that a light-duty position existed with Employer in 2006, a fact known to Claimant because he had worked in that position for three days, such evidence failed to shift the burden to Employer because "the regulations specifically outline the time period in which a claimant's evidence must show [Employer] had available jobs, which starts with the filing of the Notice of Ability to Return to Work and ends with the filing of the Modification Petition." (*Id.* (citing 34 Pa. Code § 123.301 (b)).) Therefore, the Board affirmed the WCJ's Decision and Order, finding Claimant failed to raise the issue of specific job availability, with evidence, such that the burden never shifted to Employer.

On appeal to this Court,[5] Claimant again argues that (1) Employer failed to prove that it met its statutory burden to show that it had no in-house position to offer Claimant before relying on the LMS, and (2) Employer failed to present sufficient medical evidence necessary to support its petition to modify Claimant's benefits. We address those issues in turn.

## I.    In-House Position

We first address Claimant's argument that Employer's modification petition should be denied because Employer failed to prove that it did not have an available job within itself suitable for Claimant. Claimant contends that Employer has a statutory burden to prove the nonexistence of an available suitable job for Claimant before it can rely on an earning power assessment or labor market survey. Claimant argues that the Board's view, requiring Claimant to first present evidence of a specific job availability with Employer between the time when the Notice of Ability to Return to Work was issued and the filing of Employer's modification petition in order to trigger Employer's burden to prove it had no suitable in-house positions available, is too severe and contravenes the aims and goals of the Workers' Compensation (WC) Act.[6] Claimant argues that because Employer employs thousands of people in varying capacities, ranging from custodial to office work, "it is difficult to fathom that no light-duty, sedentary or modified duty work whatsoever was available for [Claimant,]" and that "[a]lternative work is probably

---

[5] This Court's scope of review in workers' compensation appeals is limited to determining whether necessary findings of fact are supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated. *Elberson v. Workers' Comp. Appeal Bd. (Elwyn, Inc.)*, 936 A.2d 1195, 1198 n.2 (Pa. Cmwlth. 2007).

[6] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2708.

7

available every day." (Claimant's Br. at 16.) Furthermore, Claimant interprets *Rosenberg* for the proposition that "[w]here the claimant presents some evidence suggesting the existence of a possibly available and viable job with the employer, the employer then has the rebuttal burden of proving the absence of any appropriate position before the employer can rely on an earning power assessment." (*Id.* at 13.) According to Claimant, the fact that he worked a light-duty position with Employer in 2006 for three days is sufficient evidence to shift the burden to Employer to show no such position was available.

Pursuant to Section 306(b)(2) of the Act,[7] if a claimant receiving WC benefits is able to participate in substantial gainful employment and "the employer has a specific job vacancy the [claimant] is capable of performing, the employer **shall** offer such job to the [claimant]." 77 P.S. § 512(2) (emphasis added). Regulations dictate the time period in which an employer bears this obligation to offer a suitable job to the employee: "The employer's obligation to offer a specific job vacancy to the employee commences when the insurer provides the notice [of ability to return to work] . . . and shall continue for 30 days or until the filing of a Petition for Modification or Suspension, whichever is longer." 34 Pa. Code § 123.301(b).[8] The WC Act and applicable regulations are silent, however, as to whether the burden of proof in a modification petition first lies with an employer to prove the nonexistence of an available in-house job suitable for claimant, or with the claimant to prove employer does have such a job.

---

[7] Added by Section 4 of the Act of June 24, 1996, P.L. 350.
[8] Here, the relevant time period would be between July 1, 2014, when the Notice of Ability to Return to Work was issued, and November 26, 2014, when Employer filed its modification petition.

8

This Court first addressed this issue in *Rosenberg*. There, the claimant provided uncontradicted evidence that a specific job within her capabilities existed with the employer after claimant received a notice of ability to return to work and before the employer filed its modification petition. We noted that the WC Act was silent as to the presentation of evidence, but we were "mindful that the burden of proof may be placed on a party who must prove existence of a fact rather than on a party who must prove its non-existence." *Rosenberg*, 942 A.2d at 251. This Court held that "**once the issue is raised by evidence** of a possible opening with employer, the employer has the burden of proof." *Id.* (emphasis added). The Court further noted that "[t]he time period in question starts with the notice of ability to return to work and continues until the filing of a petition for modification." *Id*. (citing 34 Pa. Code § 123.301(b)). Because the claimant provided evidence that a suitable job with her employer was available within this time frame, the Court found that the burden had shifted to the employer to prove that no such job existed and remanded the case accordingly. *Id.* at 252.

We reiterated this holding in *Reichert v. Workers' Compensation Appeal Board (Dollar Tree Stores)*, wherein we summarized the holding in *Rosenberg*, as follows:

> [A]n employer does **not** have the burden to prove the **non-existence** of available work at its own facility as a necessary element of the modification petition. Rather, a claimant may present evidence that '[d]uring the period in which the employer . . . had a duty to offer a specific job,' the employer had a specific job vacancy that it intended to fill that the claimant was capable of performing. The burden then shifts to the employer to rebut the claimant's evidence.

80 A.3d 824, 829-30 (Pa. Cmwlth. 2013) (emphasis in original) (citations and quotation marks omitted). In that case, we found the claimant did not present

evidence that the employer was actively recruiting for a specific job vacancy or that the employer had posted the existence of a specific vacancy. *Id.* at 830. The only evidence of job vacancies was presented by claimant's vocational expert, who testified that employer was recruiting for various positions through its website. However, his testimony was not credited by the WCJ because he visited the website after the modification petition was filed. *Id.*

Unlike *Rosenberg* or *Reichert*, Claimant, here, did not present evidence of a specific job opening with Employer between the filing of the Notice of Ability to Return to Work and Employer's modification petition. The only evidence Claimant presented that supports the existence of such a position was his testimony that he worked a light-duty position with Employer in 2006. However, this substantially predates the relevant time period by approximately eight years. Due to the frequency with which large employers re-organize and implement new policies, the fact that a suitable job for Claimant existed with Employer in 2006 does not reasonably suggest that a specific job within Claimant's capabilities was available between July 1, 2014, when the Notice of Ability to Return to Work was issued, and November 26, 2014, when Employer filed its modification petition. Additionally, Claimant's assertion that a job is "probably available" because of Employer's size, without any attempt to provide evidence of a specific opening, does not satisfy Claimant's initial burden. Therefore, the Board was correct in holding that the burden never shifted to Employer to show that it had no in-house position within Claimant's capabilities.

## II.    Sufficiency of Evidence

We next address Claimant's argument that the Board erred in affirming the WCJ's grant of Employer's modification petition because Employer failed to

present sufficient evidence. Section 306(b)(2) of the WC Act allows for modification of benefits based on a claimant's earning power. 77 P.S. § 512(2). "'Earning power' shall be determined by the work the employe is capable of performing and shall be based upon expert opinion evidence which includes job listings with agencies of the department, private job placement agencies and advertisements in the usual employment area." *Id.*

Here, Employer provided the testimony of a vocational expert who concluded, based on her in-person meeting with Claimant, personal visits to various job sites, and an IME, that Claimant had an earning power of between $320 and $800 per week. The WCJ specifically credited both the vocational expert's testimony and the IME physician's testimony. Although Claimant states in his brief that he does not ask this Court to re-weigh the WCJ's credibility determinations, he nevertheless argues that the LMS was flawed because it was based on an IME, which conflicts with the testimony of Claimant and his treating physician regarding Claimant's capabilities. Essentially, Claimant asks us to re-weigh the IME physician's credibility to determine whether the LMS, which relies on the IME, should be considered valid. However, it is well-established that credibility determinations in workers' compensation matters are within the discretion of the WCJ, not the Board or this Court. *Vols v. Workmen's Comp. Appeal Bd. (Alperin, Inc.)*, 637 A.2d 711, 714 (Pa. Cmwlth. 1994). Furthermore, the testimony of a single medical expert can be a reasonable basis upon which a WCJ may arrive at a finding of fact despite conflicting medical evidence. *Robertshaw Controls Co. v. Workers' Comp. Appeal Bd. (Raffensperger)*, 710 A.2d 1232, 1234 (Pa. Cmwlth. 1998).

11

Here, the WCJ credited the testimony of the vocational expert and IME physician and rejected the testimony of Claimant's treating physician. Because this testimony provides substantial evidence to support the conclusion that Claimant is capable of earning $320 per week, the Board properly affirmed the WCJ's Decision based on these credibility determinations despite the presence of conflicting testimony provided by Claimant and his treating physician.[9]

Accordingly, we affirm.

_____

**RENÉE COHN JUBELIRER,** Judge

---

[9] To the extent Claimant argues the LMS is defective because the vocational expert did not seek input from Claimant's treating physician, we note that Employer did so at its own risk. Had the WCJ found the treating physician's testimony more credible than the IME physician's testimony, the LMS that was based upon the IME physician's restrictions would have lacked a foundation, rendering it meaningless.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Gary Koehler,                        :
                    Petitioner        :
                                      :
            v.                        :      No. 3 C.D. 2017
                                      :
Workers' Compensation Appeal          :
Board (SEPTA),                        :
                    Respondent        :

# **O R D E R**

**NOW**, August 28, 2017, the Order of the Workers' Compensation Appeal Board, dated December 6, 2016, granting Employer Southeastern Pennsylvania Transportation Authority's Modification Petition, is **AFFIRMED**.


_____
**RENÉE COHN JUBELIRER,** Judge