**Edward KLEINHAGAN, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (KNIF FLEXPAK CORPORATION), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 29, 2010.

Decided April 22, 2010.

---

Lester Krasno, Pottsville, for petitioner.

Wayne S. Fegley, Hazleton, for respondent.

BEFORE: McGINLEY, Judge, BROBSON, Judge, and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

Edward Kleinhagan (Claimant) petitions for review from an order of the Workers' Compensation Appeal Board (Board) that affirmed the decision of a Workers' Compensation Judge (WCJ) granting the Modification Petition filed by KNIF Flexpak Corporation (Employer). We affirm.

Claimant sustained an injury to his lower back in the course and scope of his employment with Employer on February 2, 2005. Employer issued a Notice of Compensation Payable (NCP) acknowledging a lumbar strain/sprain. Pursuant to the NCP, Claimant received $304.20 per week based on an average weekly wage of $338.00.

On September 17, 2007, Employer filed a Modification Petition alleging that work was generally available to Claimant within his restrictions as of August 24, 2007. In support of its Petition, Employer presented the testimony of Scott Naftulin, D.O., board certified in physical medicine and rehabilitation, who examined Claimant on March 20, 2007. Based upon Claimant's medical history and his physical examination, Dr. Naftulin opined Claimant sustained a lumbar sprain or strain as a result of his work-related injury. He further concluded that Claimant may have also sustained an internal disc disruption at L4–5 and L5–S1. Dr. Naftulin opined that Claimant was capable of returning to full

time employment at medium duty. Dr. Naftulin testified that he received and reviewed five job descriptions included in a labor market survey performed by Joseph M. O'Connor. He believed Claimant was physically capable of performing the duties required by those jobs.

Employer submitted a copy of a Notice of Ability to Return to Work. It is dated March 28, 2007 and indicates Claimant was released to modified work by Dr. Naftulin.

Employer further presented the testimony of Mr. O'Connor, a vocational specialist for Vocational Rehabilitation Services of Northeast Pennsylvania, Inc., who conducted a vocational interview with Claimant on May 4, 2007. Claimant provided Mr. O'Connor with his educational background, his military service history, and his employment history. Subsequent to the vocational interview, Mr. O'Connor identified five jobs within Claimant's physical restrictions established by Dr. Naftulin that were open and available in Claimant's usual employment area. These included a sewing machine operator, a cashier/stock clerk position, an appointment setter, and two telemarketer positions. Mr. O'Connor stated Claimant would have an earning power of $250.95 per week considering those job openings. He issued a labor market survey.

According to Mr. O'Connor, he presented a copy of the Notice of Ability to Return to Work to Claimant and counsel at the vocational interview. He added that he questioned both Claimant and his counsel if they had previously received copies of that document and they agreed that they had.[1]

Claimant's testimony was limited to the fact that he does not own or have access to a computer, that he never operated a computer, and that he did not know how to operate a computer. Claimant did not present any medical testimony.

The WCJ credited the testimony of Dr. Naftulin as well as that of Mr. O'Connor. In regard to Claimant's inability to use a computer, the WCJ noted that neither the sewing machine operator, nor the cashier/stock clerk position required the use of a computer. Further, the WCJ determined that while the remaining three jobs did require some computer use, the three remaining employers offered necessary training. The WCJ found that Claimant was physically capable of performing the five positions included in the labor market survey. He concluded Employer met its burden of proof to establish that Claimant had an earning power of $250.95 per week. He granted Employer's Modification Petition and modified Claimant's benefits accordingly as of July 31, 2007. The Board affirmed. This appeal followed.[2]

■ Claimant argues on appeal that Employer was precluded from obtaining a modification of benefits as a result of its

---

1. These statements testified to by Mr. O'Connor contain hearsay in regard to out of court statements made by Claimant and/or his counsel. They fall within an exception to the hearsay rule, however, and are admissible. Section 803 of the Pennsylvania Rules of Evidence indicates as follows:

> The following statements, as hereinafter defined, are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> . . .

> (25) Admission by party-opponent. The statement is offered against a party and is (A) the party's own statement in either an individual or a representative capacity . . .
> Pa.R.E. 803(25).

2. Our review is limited to determining whether an error of law was committed, whether necessary findings of fact are supported by substantial evidence and whether constitutional rights were violated. *Gentex Corp. v. Workers' Compensation Appeal Board (Morack)*, 975 A.2d 1214 (Pa.Cmwlth.2009).

failure to timely provide him with a Notice of Ability to Return to Work consistent with Section 306(b)(3) of the Pennsylvania Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 512(3). Section 306(b)(3) of the Act provides:

> If the insurer receives medical evidence that the claimant is able to return to work in any capacity, then the insurer must provide *prompt written notice,* on a form prescribed by the department, to the claimant, which states all of the following:
>
> (i) The nature of the employe's physical condition or change of condition.
>
> (ii) That the employe has an obligation to look for available employment.
>
> (iii) That proof of available employment opportunities may jeopardize the employe's right to receipt of ongoing benefits.
>
> (iv) That the employe has the right to consult with an attorney in order to obtain evidence to challenge the insurer's contentions. (Emphasis added).

77 P.S. § 512(3).

Claimant acknowledges that Mr. O'Connor's testimony that at the time of the vocational interview on May 4, 2007, Mr. O'Connor presented a copy of the Notice of Ability to Return to Work to him and his attorney. Claimant further acknowledges that Mr. O'Connor asked if they had previously received copies of that document and they agreed that they had. Claimant avers, however, that merely submitting evidence that the Notice of Ability to Return to Work was "received" does not satisfy the Act's requirement that the document be "promptly" provided. According to Claimant, the fact that Section 306(b)(3) of the Act mandates that a Notice of Ability to Return to Work be "promptly" supplied to an injured worker necessitates a finding that the document be sent as quickly as possible after the receipt of new medical evidence indicating he was physically capable of some work. Claimant states that "[a]t best, the testimony … establishes that Claimant received the Notice on May 4, 2007. As indicated above, the necessity that the Notice be provided promptly, undoubtedly suggests that the Notice be sent quickly, and not almost two months thereafter." Claimant's brief, p. 12.

Claimant's brief is silent in regard to the case of *Melmark Home v. Workers' Compensation Appeal Board (Rosenberg),* 946 A.2d 159 (Pa.Cmwlth.2008), wherein this Court squarely addressed the issue of what constitutes "prompt" service of a Notice of Ability to Return to Work for the purposes of Section 306(b)(3) of the Act. Upon review of *Rosenberg,* Claimant's argument must be rejected.

In *Rosenberg,* this Court acknowledged that the phrase "prompt written notice," as it appears in Section 306(b)(3) of the Act, is not defined. *Rosenberg,* 946 A.2d at 162. Following a review of the Act and prior case law, we stated:

> The purpose of this statutory requirement is to provide notice to a claimant that there is medical evidence that the claimant can perform some work; that benefits could be affected; and that the claimant has an obligation to look for work. A claimant must have notice that her benefits could be affected *before* the employer attempts to modify benefits. Otherwise, a modification petition would be a claimant's first notice that a doctor has found the claimant capable of work. We hold that "prompt written notice" requires an employer to give a claimant notice of the medical evidence it has received a reasonable time *after* its receipt lest the report itself becomes stale. It also requires an employer to give

notice to the claimant a reasonable time *before* the employer acts upon the information. (Emphasis in original).

*Id.* at 163.

We recognized that whether an employer has complied with the requirements of Section 306(b)(3) of the Act in regard to supplying "prompt written notice" that it has received medical evidence that an employee is physically capable of returning to work in some capacity is something that needs to be decided on a case by case basis. *Id.* The crucial factor is the impact upon the claimant. *Id.* at 164.

This Court finds that Employer satisfied the requirements of Section 306(b)(3) in the instant matter. Dr. Naftulin examined Claimant on March 20, 2007. Based on his examination on that date, he opined Claimant was physically capable of returning to medium duty. Pursuant to *Rosenberg,* Claimant must receive his Notice of Ability to Return to Work based on Dr. Naftulin's opinion *before* Employer attempted to modify benefits. Claimant does not dispute that he and his attorney received copies of the Notice of Ability to Return to Work by at least May 4, 2007 when Claimant submitted to Mr. O'Connor's vocational interview.[3] Moreover, Employer did not file its Modification Petition until September 17, 2007 wherein it sought modification as of August 24, 2007. There is no question that Claimant was provided with the Notice of Ability to Return to Work prior to Employer actually acting upon the information contained in Dr. Naftulin's medi-

cal report; *i.e.,* the date it alleged entitlement to relief.

We also note that while the Notice of Ability to Return to Work was deemed untimely in *Rosenberg* because it was based on a stale medical report, such is not the case here. In *Rosenberg,* the employer's medical expert issued a report indicating the claimant could return to work in some capacity on June 16, 2005. Five and one half months passed before the employer supplied the claimant with a Notice of Ability to Return to Work. Thus, the medical report was deemed stale at the time the latter document was issued. This problem was compounded by the fact that the employer, when it filed its modification petition, sought relief as of July 15, 2005. It sought to modify the claimant's benefits months before the Notice of Ability to Return to Work was ever issued.

Unlike in *Rosenberg,* a mere one and a half months passed from the time Dr. Naftulin examined Claimant and the last possible date Claimant could have been supplied with a Notice of Ability to Return to Work.[4] Hence, the medical information had not gone stale. In so finding, we recognize that time parameters must be considered regarding Dr. Naftulin's ability to actually issue the report after examining Claimant, the submission of the report to Employer, and Employer's service upon Claimant.

Claimant next argues that Employer failed to produce evidence that there was compliance with Sections 123.203 and 123.204 of the Act 57 Regulations.[5] Sec-

---

3. We further reiterate that Mr. O'Connor testified that both Claimant and his counsel agreed they received the Notice of Ability to Return to Work prior to the vocational interview.

4. This is irrespective of the fact that Claimant acknowledged receipt of a copy of the Notice of Ability to Return to Work prior to his May

4, 2007 meeting with Mr. O'Connor. As noted above, the Notice of Ability to Return to Work is actually dated March 28, 2007.

5. The group of amendments added to the Act by the Act of June 24, 1996, P.L. 350 are commonly known as Act 57.

tion 123.203(c) of the Act 57 Regulations provides, in relevant part:

> (c) A workers' compensation judge may not consider the results of an earning power assessment interview if the workers' compensation judge finds that the vocational expert has not complied with § 123.204 (relating to conduct of vocational experts) or that the insurer has not complied with § 123.205 (relating to financial interest disclosure).

34 Pa.Code § 123.203(c).[6]

Section 123.204 of the Act 57 Regulations states:

> (a) Before conducting an earning power assessment interview, the vocational expert shall disclose to the employee, in writing, the role and limits of the vocational expert's relationship with the employee.

> (b) A vocational expert who conducts an earning power assessment interview shall generate a written initial report detailing the expert's involvement in the litigation and conclusions from the interview. The initial report need not contain the results or conclusions of any surveys or tests. The vocational expert shall serve a copy of the initial report on the employee and counsel, if known, within 30 days of the date of the interview.

> (c) A vocational expert who authors additional written reports, including earning power assessments or labor market surveys, shall simultaneously serve copies of these written reports upon the employee and counsel, if known, when the expert provides the written reports to the insurer or its counsel.

> (d) A vocational expert who satisfies the requirements of this section complies with the Code of Professional Ethics for Rehabilitation Counselors pertaining to the conduct of expert witnesses for purposes of section 306(b)(2) of the act (77 P.S. § 512(2) ).

34 Pa.Code § 123.204 [7]

Claimant contends that the record is devoid of evidence that Mr. O'Connor simultaneously mailed a copy of the earning power assessment/labor market survey to Claimant or his counsel upon providing those documents to Employer. Claimant elaborates, "[w]hile Mr. O'Connor testified that he mailed the labor market survey to Claimant's counsel ... there is no evidence offered at (sic) to when the labor market survey was mail (sic) and certainly no evidence which could establish that it was mailed simultaneously with the copies sent to insurer or its counsel." Claimant's brief, p. 14. Later in Claimant's brief, he alludes to the fact that the document was not mailed to himself or his counsel at all, let alone simultaneously with it being sent to Employer or its insurer. Claimant alleges Employer violated Section 123.204(c) of the Act 57 Regulations. Claimant reiterates that Section 123.203(c) of the Act 57 Regulations provides that if a vocational expert has not complied with Section 123.204, the WCJ cannot consider the results of the earning power assessment interview. Claimant contends establishing compliance with Section 123.204(c) is part of Employer's burden of proof and that Employer failed to meet his burden.

The Board disposed of this issue as follows:

---

6. Section 123.203 was adopted on January 16, 1998, amended on June 22, 2007, effective June 23, 2007. 37 Pa.Bull. 2804. (June 23, 2007).

7. Section 123.204 was adopted June 22, 2007, effective June 23, 2007. 37 Pa.Bull. 2804. (June 23, 2007).

As we see no indication that Defendant's burden of proof includes producing evidence establishing its compliance with these Regulations, we reject Claimant's argument. Second, the cited regulations state that they were "adopted June 22, 2007, effective June 30, 2007." Here, Mr. O'Connor credibly testified that the vocational interview occurred May 4, 2007, and we see no indication that the regulations were to be retroactive in effect.

Reproduced Record (R.R.) at 315a.

We agree with the Board that Employer need not establish compliance with Section 123.204(c) as a part of its initial burden of proof when seeking modification. Section 306(b)(2) of the Act provides as follows:

(2) "Earning power" shall be determined by the work the employe is capable of performing and shall be based upon expert opinion evidence which includes job listings with agencies of the department, private job placement agencies and advertisements in the usual employment area. Disability partial in character shall apply if the employe is able to perform his previous work or can, considering the employe's residual productive skill, education, age and work experience, engage in any other kind of substantial gainful employment which exists in the usual employment area in which the employe lives within this Commonwealth ... If the employer has a specific job vacancy the employe is capable of performing, the employer shall offer such job to the employe. In order to accurately assess the earning power of the employe, the insurer may require the employe to submit to an interview by a vocational expert.... 77 P.S. § 512(2).

■ Under Section 306(b)(2) of the Act, an employer may seek modification of a claimant's benefits by either offering the claimant a specific job that it has available that he is capable of performing or establishing earning power through "expert opinion evidence." *Allied Prods. v. Workers' Compensation Appeal Board (Click)*, 823 A.2d 284 (Pa.Cmwlth.2003). In interpreting Section 306(b)(2), we previously found that while Section 306(b)(2) provides that the employer shall offer the claimant a specific job if it has one available, it does not require proof of the absence of specific jobs with the employer as a prerequisite to pursuing modification. *Burrell v. Workers' Compensation Appeal Board (Philadelphia Gas Works)*, 849 A.2d 1282 (Pa. Cmwlth.2004). Rather, we stated that the claimant may present proof of the existence of such a position as a defense to modification. *Id.* The holding of *Burrell* has since been distinguished by *Rosenberg v. Workers' Compensation Appeal Board (Pike County)*, 942 A.2d 245 (Pa.Cmwlth. 2008).

In *Burrell*, modification was sought after the claimant was discovered working alternative employment via surveillance evidence. In *Pike County*, however, like the present matter, the employer sought modification based on the contents of a labor market survey. This Court, in *Pike County*, held that the claimant still had the duty to place into the record prima facie evidence that a position was available with employer that he was physically capable of performing during the time period between the issuance of the Notice of Ability to Return to Work and the filing of the modification petition. We stated, however, that once the claimant has done so, the employer bore the burden of proof.

■ Similarly, we conclude that the claimant shall bear the responsibility of raising the issue of a vocational expert's alleged failure to supply him with a copy of the earning power assessment/labor market survey as a defense to a modification

before the WCJ. Moreover, the claimant should raise as a defense any claim that this document was not sent to him or his counsel "simultaneously," as that term may be defined, when it was sent to the employer or its insurer. Once this is done, the burden should shift to the employer to establish the labor market survey/earning power assessment was timely and appropriately supplied to the claimant and his counsel.

█ Claimant did not raise this issue before the WCJ. Claimant did not raise any argument associated with Section 123.204(c) of the Act 57 Regulations in the live hearing before the WCJ. Similarly, Claimant did not object during Mr. O'Connor's deposition in this regard. Although, as noted above, Mr. O'Connor referenced mailing his earning power assessment to Claimant, his testimony in this regard was not in the context of whether he simultaneously supplied that document to Claimant and his Counsel at the time he provided it to Employer or its insurer. Rather, the extent of that dialogue was to determine whether a "job seeking manual" was provided to Claimant at the vocational interview or subsequent to the same. R.R. at 106a. Claimant did not raise the issue of the timeliness of his receipt or lack thereof of Mr. O'Connor's labor market survey/earning power assessment in the evidentiary record. Thus, the burden never shifted to Employer to establish that this document was appropriately provided. The WCJ was not precluded from considering the results of the earning power assessment interview consistent with Section 123.203(c) of the Act 57 Regulations.

We agree that with the date of the amendment/enactment of Sections 123.203 and 123.204 of the Act 57 Regulations, a question arises as to whether they are even applicable to the instant matter. We acknowledge that while Mr. O'Connor conducted his vocational interview on May 4, 2007, he did not issue his labor market survey/earning power assessment until August 27, 2007. Reproduced Record, p. 134a. His labor market survey/earning power assessment, therefore, was not completed until after the enactment of Section 123.204(c) that requires a copy of this document be simultaneously mailed to Claimant and his counsel upon its mailing to Employer. This Court further recognizes, however, that Claimant's date of injury was February 2, 2005, long before the amendment/enactment of the aforementioned regulations. Thus, questions arise as to whether the regulations at issue are retroactive and applicable to the present case. *See generally Miegoc v. Workers' Compensation Appeal Board (Throop Fashions/Leslie Fay)*, 961 A.2d 269 (Pa. Cmwlth.2008) (holding legislation that affects substantive rights will not be construed to apply retroactively unless it is expressly provided that it shall be applied retroactively, but that legislation that merely alters procedure will generally be applied to pending proceedings).

Ultimately, however, whether Sections 123.203 and 123.204 of the Act 57 Regulations should be applied retroactively is a question that will be decided on another day. We have already concluded that Claimant failed to raise as an issue in the evidence whether, when serving a copy of the labor market survey/earning power assessment to Employer, Mr. O'Connor failed to also simultaneously serve copies of this document upon Claimant and his counsel. This is sufficient to dispose of Claimant's appeal.

After a review of the record, we conclude that the Board did not err in affirming the WCJ's decision as all findings are supported by substantial evidence. Accordingly, the order of the Board is affirmed.

## ORDER

AND NOW, this 22nd day of April, 2010, the order of the Workers' Compensation Appeal Board in the above-captioned matter is affirmed.