# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael Ayers,                          :
               Petitioner          :
                                          :
       v.                               :   No. 1056 C.D. 2018
                                          :   Submitted: December 7, 2018
Workers' Compensation Appeal            :
Board (General Dynamics),               :
               Respondent          :

BEFORE:    HONORABLE ROBERT SIMPSON, Judge
               HONORABLE P. KEVIN BROBSON, Judge
               HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**            **FILED: March 22, 2019**

Michael Ayers (Claimant) petitions for review from an order of the Workers' Compensation Appeal Board (Board) that affirmed an order of a Workers' Compensation Judge (WCJ) granting the modification petition General Dynamics (Employer) filed based on a labor market survey (LMS). Claimant argues the Board erred in affirming the WCJ because he applied for the suitable jobs listed in the LMS in good faith. He further contends Employer did not establish the non-existence of a position within his restrictions when it obtained the LMS as is legally required. He also assigns error in that the Board did not consider after-acquired evidence showing Employer had vacancies for light-duty work. Upon review, we affirm.

## I. Background

Starting in 1999 and until his work injury in November 2009, Claimant worked for Employer in a heavy-duty capacity in a union position. The accepted

injury was a herniated disc in the cervical spine at C6-7, for which Claimant underwent decompression and fusion surgery in 2010. Claimant returned to work for Employer in 2011 as a light-duty mechanic until his layoff in July 2014. His average weekly wage was $1,335.59, for a compensation rate of $836.00.

Following an independent medical examination (IME), Claimant received a notice of ability to return to work dated December 1, 2015. Employer engaged vocational expert Joseph O'Conner (Vocational Expert) to perform an LMS.

In April 2016, Employer filed a modification petition based on the positions identified in the LMS. Claimant denied the allegations in the modification petition, and the matter was assigned to a WCJ.

The WCJ conducted two hearings. Employer submitted the deposition testimony of Vocational Expert and the deposition testimony of Thomas Allardyce, M.D., a board-certified orthopedic surgeon (Employer's Medical Expert), who conducted the IME. In addition to testifying on his own behalf, Claimant presented the testimony of Suzanne Jones, Employer's Director of Human Resources (HR Director). He also submitted the deposition testimony of his orthopedic surgeon, Dr. Alan Gillick (Treating Physician).

Employer's Medical Expert conducted IMEs of Claimant in September 2014 and October 2015. Based on his examinations, he opined that Claimant fully recovered from his work injury and could return to heavy-duty work without restrictions. As a result, he approved all the positions identified in the LMS.

Vocational Expert testified regarding the LMS, in which he identified eight positions as follows: (1) security officer with Securitas Security Services, medium-duty ($400/week); (2) dispatcher for Falzone's Towing Services, sedentary to light-duty ($400/week); (3) loss prevention officer for Gerrity's Supermarket, light to medium-duty ($400/week); (4) security guard for BCM Solutions, medium-duty ($296-394/week); (5) loader/unloader with Cintas, a heavy-duty job ($400-480/week); (6) warehouse selector for Capstone Logistics, a heavy-duty job ($524-760/week); (7) manufacturing associate with McCarthy Tire Service, a heavy-duty job ($380-400/week); and (8) warehouse worker for Valmont Industries, also heavy-duty ($400-480/week). In preparing the LMS, Vocational Expert relied on Employer's Medical Expert's opinion that Claimant had no physical restrictions.

Vocational Expert confirmed all the jobs were available when he prepared the LMS and for at least a week afterwards. He testified the Falzone's Towing position was not filled until May, and the Gerrity's Supermarket position was open until June. Employer also submitted a signed confirmation that it lacked a specific vacancy, and "there continues to be no work available at [Employer] which can be made available and/or offered to [Claimant] from the date of [10/19/15] until the current date[,] [9/28/16]." Reproduced Record (R.R.) at 214a.

Treating Physician performed Claimant's neck surgery in 2010, and continues to treat him biannually. He opined that Claimant had a partial recovery as he continues to suffer arm weakness, particularly in the left arm. As a result, Treating Physician imposed a 20-pound lifting restriction and only released Claimant to perform sedentary or light-duty work because he remains at risk for

3

more deterioration.  He opined that Claimant could not perform the heavy-duty jobs identified in the LMS (Cintas, Capstone Logistics, McCarthy Tire Services and Valmont Industries).  However, Treating Physician opined Claimant would be able to perform the security positions with Gerrity's Supermarket, BCM Solutions and Securitas as long as he was not at risk of an altercation.  He also opined Claimant could perform the position at Falzone's Towing.

Claimant testified regarding his capabilities and his efforts in obtaining employment.  He was attending a university online, expecting to graduate in 2017 with a bachelor's degree in information technology.  Claimant received notice of the available positions set forth in the LMS on April 12, 2016.  However, he did not apply until three weeks later.  On May 4, he applied for the four light-duty jobs:  (1) Gerrity's Supermarket; (2) BCM Solutions;  (3) Securitas; and (4) Falzone's Towing.

When he applied for these four positions, Claimant undermined his efforts by informing potential employers that he was referred by workers' compensation and returning from full disability.  He also advised he was unable to start until more than six weeks later, on June 20th, because he had a pre-planned vacation.  Claimant did not receive any requests for interviews or job offers. Claimant admitted he did not apply for any jobs outside the LMS despite a release by Treating Physician to return to work in a light-duty capacity.  Claimant also acknowledged he was unaware of whether Employer had any light-duty job vacancies.  See WCJ's Op., 5/10/17, Finding of Fact (F.F.) No. 6.f.

4

Subsequently, Claimant requested to depose HR Director regarding vacancies with Employer and recalls for positions within his physical restrictions. The WCJ allowed submission of her testimony by deposition. HR Director testified about the layoff and job-bidding process; she explained that, given his seniority, Claimant could have bid for a mechanic position instead of taking the voluntary layoff in 2014. She advised she was unaware whether jobs with Employer existed between his notice of return to work in December 2015, and the LMS in April 2016. She was also unsure whether mechanics were recalled to work after the layoff.

Based on the evidence submitted, the WCJ granted the modification petition. He determined Claimant's application efforts did not refute Employer's expert evidence of his earning power through suitable jobs identified in the LMS.

The WCJ credited Treating Physician's opinion over the opinion of Employer's Medical Expert. Based on the credited medical testimony, the WCJ found Claimant was only capable of performing the four light-duty positions the LMS identified: Gerrity's Supermarket; BCM Solutions; Securitas; and Falzone's Towing. The WCJ emphasized Claimant agreed he was able to perform these four positions, finding them medically and vocationally suitable. The WCJ credited Vocational Expert's testimony that all four positions were open and available as of April 12, 2016.

Despite the fact that Claimant received no job offers, the WCJ found the positions open and available. The WCJ faulted Claimant for his delay in applying for these jobs weeks after receiving notice of them. Further, when Claimant applied, he advised potential employers he was referred by workers' compensation, and he

5

listed a start date that was almost six weeks later. Accordingly, the WCJ found Claimant did not rebut Employer's expert evidence of Claimant's earning power. The WCJ also emphasized that Claimant did not attempt to find any employment on his own since 2014.

In addition, the WCJ noted the lack of evidence showing that Employer posted, announced or recruited for a specific position within Claimant's restrictions. The WCJ credited HR Director's testimony that she did not know of any job vacancies with Employer that fell within Claimant's restrictions. Claimant testified he had no knowledge of any specific job vacancies, and he admittedly did not contact Employer regarding open positions after his layoff. Thus, Claimant presented no *prima facie* evidence showing Employer had a specific vacancy he could fill. As a result, the WCJ concluded "the burden never shifted to Employer to establish the non-existence of a specific job vacancy." WCJ Op., Conclusion of Law (C.L.) No. 6.

Based on the four suitable, available positions, the WCJ found Claimant had an earning capacity of $400 a week, or $10 per hour assuming a 40-hour week. F.F. No. 14. He modified Claimant's benefits accordingly, as of April 12, 2016. Claimant appealed to the Board.

Claimant asserts that two months after the WCJ's decision, he received a copy of a "Recall List" from the union, indicating the recall of other union employees with less seniority for light-duty jobs with Employer. Pet'r's Br. at 7. On appeal to the Board, Claimant submitted a copy of the Recall List to support his argument that Employer had a suitable vacancy before obtaining the LMS.

6

The Board affirmed the WCJ without considering the Recall List. See Bd. Op., 7/13/18. As to the burden of proving a specific job vacancy with Employer, it reasoned that Claimant failed to submit evidence that Employer had a specific vacancy within his restrictions to shift the burden to Employer to prove its non-existence. As to the burden of proving the availability of positions identified in the LMS, the Board concluded Employer established the four suitable positions were available and demonstrated Claimant's earning capacity. It emphasized the WCJ was permitted, as fact-finder, to discern a lack of good faith in Claimant's application efforts.

Claimant now petitions for review.

## II. Discussion

On appeal,[1] Claimant argues the Board erred in affirming the WCJ because Employer did not prove it had "no job availability" within his restrictions. Pet'r's Br. at 5. He maintains the Recall List constitutes after-acquired evidence showing Employer had vacancies for light-duty positions that should have been offered to him. Claimant also contends the jobs identified in the LMS were not truly available because he applied for the four suitable jobs and he did not receive any offers or other follow-up.

---

[1] Our review in a workers' compensation appeal is limited to determining whether substantial evidence supported the WCJ's findings of fact, whether the WCJ committed an error of law, or whether the WCJ's decision violated constitutional rights. Grimm v. Workers' Comp. Appeal Bd. (Fed. Express Corp.), 176 A.3d 1045 (Pa. Cmwlth.) (en banc), appeal denied, 189 A.3d 385 (Pa. 2018).

Pursuant to Section 413(a) of the Workers' Compensation Act (Act),[2] a WCJ may modify a claimant's benefits when the claimant's disability decreased. 77 P.S. §772. To support a modification petition, an employer "must show that a claimant's 'disability has ended or has been reduced[,] and that work is available to the claimant and the claimant is capable of doing such work.'" Burrell v. Workers' Comp. Appeal Bd. (Phila. Gas Works & Compservices, Inc.), 849 A.2d 1282, 1287 (Pa. Cmwlth. 2004) (citation omitted). In this context, "disability" means the "loss of earning power caused by the work injury." Phoenixville Hosp. v. Workers' Comp. Appeal Bd. (Shoap), 81 A.3d 830, 841 (Pa. 2013).

Under Section 306(b)(2) of the Act,[3] 77 P.S. §512(2), "an employer may seek modification of a claimant's benefits by either[:] [(1)] offering the claimant a specific job that it has available that [s]he is capable of performing[;] or [2] establishing earning power through expert opinion evidence." Kleinhagan v. Workers' Comp. Appeal Bd. (KNIF Flexpak Corp.), 993 A.2d 1269, 1275 (Pa. Cmwlth. 2010) (emphasis added) (internal quotation marks omitted).

Claimant contends that Employer failed to meet either legal criterion for a modification petition. He argues Employer had the duty to establish it lacked any suitable positions internally prior to obtaining an LMS. He claims Employer had light-duty jobs available, but did not offer them to Claimant, and thus violated the Act. Claimant also asserts Employer did not meet its burden of proving the jobs in the LMS were open and available to him.

---

[2] Act of June 2, 1915, P.L. 736, as amended, 77 P.S. §§1-1041.4, 2501-2710.

[3] Added by the Act of June 24, 1996, P.L. 350.

## A. Specific Vacancy

First, we consider Claimant's contention that Employer had a duty to prove the non-existence of a job vacancy within his physical restrictions. In support, he cites 34 Pa. Code §123.301. In pertinent part, it states: "if a specific job vacancy exists … with the liable employer, which the employee is capable of performing, the employer shall offer that job to the employee prior to seeking a modification … of benefits based on earning power." Id. (emphasis added). Claimant focuses on Employer's duty to offer him a suitable job without regard to the prerequisite of a "specific job vacancy." Id.

## 1. Burden of Proof

This Court recently clarified which party bears the burden of proving an employer had a suitable vacancy in Brozman v. Workers' Compensation Appeal Board (Commonwealth) (Pa. Cmwlth., No. 1697 C.D. 2016, filed October 5, 2017) (unreported), 2017 WL 4413135.[4] There, the claimant contended her employer bore the burden of proving it had no available work internally before obtaining a labor market survey. We disagreed, emphasizing that the burden to prove non-existence of a position only arises after a claimant identifies and establishes the existence of a specific suitable position. Analyzing an employer's burden under Section 306(b)(2) of the Act, this Court explained "that the burden of proof may be placed on a party who must prove existence of a fact rather than on a party who must prove its non-existence." Rosenberg v. Workers' Comp. Appeal Bd. (Pike Cty.), 942 A.2d 245, 251 (Pa. Cmwlth. 2008) (en banc).

_____

[4] Pursuant to this Court's Internal Operating Procedure 414, 210 Pa. Code §69.414, this unreported panel decision post-dating January 15, 2008, may be cited for its persuasive value.

Contrary to Claimant's assumption, Section 306(b)(2) of the Act does not require an employer to offer a claimant a position. Written in the disjunctive, the section directs an employer to offer an available, suitable position to a claimant, *only if* such a position exists. Brozman.

Relevant here, a claimant may defend against a modification petition by placing *prima facie* evidence into the record "that a position was available with employer that he was physically capable of performing" before filing the modification petition. Kleinhagan, 993 A.2d at 1275. The relevant timeframe for existence of a suitable vacancy is between the notice of ability to return to work and the filing of a modification petition. An employer's burden to prove the lack of a vacancy suitable for a claimant is triggered only *after* the claimant makes a *prima facie* showing that the vacancy existed during the relevant timeframe. Id.; see Reichert v. Workers' Comp. Appeal Bd. (Dollar Tree Stores/Dollar Express & Specialty Risk Servs., Inc.), 80 A.3d 824 (Pa. Cmwlth. 2013).

Here, Claimant received the notice of ability to return to work on December 1, 2015 and the modification petition was filed on April 16, 2016. Thus, it was incumbent on Claimant to submit *prima facie* evidence of availability of a light-duty vocationally suitable position with Employer during that timeframe. Id.

During the WCJ proceedings, Claimant submitted no evidence of a specific vacancy with Employer. Indeed, he admitted he was unaware of suitable jobs with Employer. F.F. No. 6.f; R.R. at 481a. HR Director was also uncertain whether Employer had any available positions within Claimant's restrictions. R.R. at 345a.

10

The WCJ did not err in holding Claimant lacked *prima facie* evidence of a vacancy so as to trigger Employer's burden of proof. Because Claimant did not show a specific vacancy with Employer existed, Employer had no burden to prove its non-existence. Reichert; Kleinhagan; Rosenberg. Therefore, we discern no merit in Claimant's contention that Employer violated the Act by failing to offer a light-duty position to Claimant.

## 2. Recall List

We also reject Claimant's contention that the Recall List constitutes after-acquired evidence warranting a remand. He argues the Recall List demonstrates Employer had a suitable job vacancy triggering a legal obligation to offer the position to Claimant.

First, we are troubled by the timing. Claimant represents he acquired the Recall List only after the WCJ issued his decision modifying his benefits. Significantly, Claimant does not explain why the Recall List was unavailable during the WCJ proceedings. Nor does Claimant indicate any attempts to obtain such a list from the union before the record closed.

Second, it is not clear that the Recall List establishes the existence of specific vacancies within Claimant's medical and vocational restrictions. The Recall List, signed by union representatives, lists names and dates, stating "Recalled to Light Duty." R.R. at 99a. Importantly, the Recall List does not describe the positions, so it is not evident that they are vocationally suitable for Claimant. Also, the list contains only one recall (on 2/22/16) within the relevant timeframe (12/1/15 to 4/12/16).

11

Further, Claimant does not draw this Court's attention to a request to re-open the record before the WCJ or for a rehearing.[5] To warrant a rehearing, there must be some showing that the after-acquired evidence was previously unavailable. Paxos v. Workmen's Comp. Appeal Bd. (Frankford-Quaker Grocery), 631 A.2d 826, (Pa. Cmwlth. 1993). A rehearing shall "not be granted to permit a party to strengthen weak proofs already presented." Id. at 831. Moreover, the party seeking rehearing must establish the new evidence is necessary to obtain a just result. Keith v. Workers' Comp. Appeal Bd. (SEPTA) (Pa. Cmwlth., No. 591 C.D. 2015, filed Jan. 19, 2016) (unreported), 2016 WL 224041.

We are unpersuaded that inclusion of the Recall List in the record would have affected the outcome. Thus, we discern no basis for a rehearing here.

## B. Availability

Next, we assess whether the Board erred in concluding that Employer established Claimant's earning capacity by proving the suitable jobs identified in the LMS were open and available. There is no dispute that four of the jobs listed in the LMS were both medically and vocationally suitable. Thus, our analysis focuses on Claimant's contention that the four jobs the WCJ found within his capabilities, as approved by his Treating Physician, were not "available" based on decisional law refining the meaning of that term. Shoap, 81 A.3d at 843.

---

[5] Claimant could have requested a rehearing based on newly discovered evidence under Section 426 of the Act, 77 P.S. §871. Although Claimant submitted the Recall List with his appeal to the Board, that did not cure the deficiency in the record. The Board could not consider the Recall List because it was not the fact-finder. Bey v. Workers' Comp. Appeal Bd. (Ford Elec.), 801 A.2d 661 (Pa. Cmwlth. 2002). Additionally, this Court may not accept evidence that is not part of the certified record considered by the WCJ. Id.

Jobs identified in the LMS must be "actually open and potentially available." Shoap, 81 A.3d at 843. To qualify as "available," the positions identified in the LMS as proof of a claimant's earning power must "remain open until such time as the claimant is afforded a reasonable opportunity to apply for them." Valenta v. Workers' Comp. Appeal Bd. (Abington Manor Nursing Home & Rehab & Liberty Ins. Co.), 176 A.3d 374, 385 (Pa. Cmwlth. 2017) (emphasis added).

This Court recently confirmed an employer bears the burden of proving the continued availability of jobs. Smith v. Workers' Comp. Appeal Bd. (Supervalu Holdings PA, LLC), 177 A.3d 394 (Pa. Cmwlth. 2018) (en banc). When a claimant offers evidence regarding his pursuit of jobs, that may be considered when assessing their availability. Evidence that a claimant was unsuccessful in his applications does not mandate a finding that the positions were not open and available. Valenta. Rather, while evidence regarding a claimant's efforts to procure one of the identified jobs is relevant to rebutting the positions as proof of claimant's earning power, such evidence is "not dispositive of the earning power inquiry." Shoap, 81 A.3d at 846.

Here, the record establishes that the four light-duty positions identified in the LMS were open and available for at least three weeks after the date Claimant received notice of them. Vocational Expert testified the Falzone's Towing position was open until it was filled internally in May, and the Gerrity's Supermarket position was open until June. R.R. at 191a-97a. Claimant's testimony corroborates Employer's evidence regarding availability. Id. at 452a-57a. When Claimant applied in-person for three of the positions in early May, he confirmed the positions were still open.[6]

---

[6] After visiting the office in person, Claimant applied for the Securitas position online, and received no follow-up communication. Reproduced Record at 454a.

13

Unlike the claimant in Shoap, who learned the positions were filled when she applied for them, the record here shows the suitable positions were open when Claimant applied for them. Thus, Claimant had at least three weeks to apply for these positions. This more than three-week timeframe afforded Claimant a reasonable opportunity to apply for these positions. Valenta.

In considering whether Employer established continued availability of identified positions, the WCJ examined Claimant's unsuccessful application efforts. In so doing, the WCJ found that despite his application to the four suitable jobs, Claimant did not make a good faith effort to be employed. Noting his actions fell short of "bad faith or sabotage," the WCJ found that the timing of and circumstances surrounding Claimant's efforts undermined their good faith. F.F. No. 11. Specifically, the WCJ cited Claimant's: (1) unexplained delay in applying for the jobs more than three weeks after receiving notice of the openings; (2) delayed start date of six weeks after his already delayed applications; and (3) in-person comments to prospective employers that he was referred by workers' compensation. Id.; R.R. at 450a-57a, 465a; see also C.L. No. 5. Further, the WCJ underscored that Claimant did not apply for any jobs other than those in the LMS since his layoff in 2014 despite his ability to perform light-duty work. F.F. Nos. 6.e., 12, 13; R.R. at 467a.

The WCJ, who evaluated Claimant's live testimony, found that his unsuccessful application efforts did not refute Employer's evidence regarding the continued availability of the positions in the LMS. As the fact-finder, the WCJ has exclusive province over questions of credibility and evidentiary weight. Hutz v. Workers' Comp. Appeal Bd. (City of Phila.), 147 A.3d 35 (Pa. Cmwlth. 2016).

14

Discerning no error below, and "view[ing] the evidence in the light most favorable to [Employer,] the prevailing party," id. at 54, we conclude Employer met its burden of proof under Shoap and its progeny.  Smith; Valenta.

### III. Conclusion

For the foregoing reasons, we affirm the Board's order.


_____
ROBERT SIMPSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael Ayers,                              :
                Petitioner          :
                                   :
         v.                                 :    No. 1056 C.D. 2018
                                   :
Workers' Compensation Appeal            :
Board (General Dynamics),                :
                Respondent        :

# **O R D E R**

       **AND NOW**, this 22nd day of March, 2019, the order of the Workers' Compensation Appeal Board is **AFFIRMED**.

                                          _____

                                          ROBERT SIMPSON, Judge