IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Fedchem, LLC, and The State Workers   :
Insurance Fund,                       :
                Petitioners   :
                               :
          v.   :   No. 1641 C.D. 2018
                               :   Argued: September 17, 2019
Workers' Compensation Appeal Board   :
(Wescoe),                             :
                Respondent   :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                  HONORABLE P. KEVIN BROBSON, Judge
                  HONORABLE PATRICIA A. McCULLOUGH, Judge

OPINION
BY PRESIDENT JUDGE LEAVITT              FILED: November 18, 2019

        Fedchem, LLC and The State Workers Insurance Fund (collectively, Employer) petition for review of an adjudication of the Workers' Compensation Appeal Board (Board) that denied Employer's modification petition. The Board concluded that Employer did not establish that Kirk Wescoe (Claimant) had earning power and, thus, was not entitled to reduce Claimant's disability benefits. The Board acknowledged that the Workers' Compensation Judge (WCJ) failed to address a conflict in the testimony of the vocational experts, which would ordinarily require a remand. However, because the WCJ credited Claimant's testimony that he did not have the skills or experience to do the jobs identified in Employer's labor market survey, the Board concluded that the WCJ did not have to address the testimony of the vocational experts. Employer asserts that the Board erred because Claimant's subjective evaluation of his vocational ability cannot be dispositive, and, further, Claimant's belief was contradicted by the testimony of the vocational experts.

Employer argues it was incumbent upon the WCJ to resolve all conflicts in testimony. We vacate and remand.

## Background

Claimant began employment with Employer in 1985 as a general chemical operator and supervisor. On September 8, 2011, while carrying a 50-pound bag of chemicals, Claimant "entangled" his foot in shrink wrap, which caused him to make a sudden turn and injure his back. WCJ Decision at 3, Finding of Fact No. 4; Reproduced Record at 372a (R.R. ___). Claimant began collecting disability compensation at the rate of $858 per week pursuant to a Notice of Temporary Compensation payable that later converted to a Notice of Compensation Payable (NCP). In 2015, Claimant's NCP was amended to add an L4-5 disc herniation to his work injury.

On August 18, 2016, Employer filed a modification petition pursuant to Section 413(a) of the Workers' Compensation Act (Act), 77 P.S. §772.[1] Employer sought to modify Claimant's disability benefits based upon its labor market survey and earning power assessment. Claimant denied the allegations in the petition, and the WCJ scheduled a hearing.

Employer offered the medical testimony of Michael Okin, M.D., a board-certified orthopedic surgeon who conducted an independent medical examination (IME) of Claimant on January 20, 2016. He found that Claimant suffered from pre-existing degenerative disc disease that was aggravated by his work injury to his disc at L4-5. Dr. Okin opined that Claimant should continue pain management treatment and not return to his pre-injury job, which required lifting 50-pound bags. However, Dr. Okin opined that Claimant could return to light-duty

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.4, 2501-2710.

2

work.[2]    Dr. Okin reviewed the four job descriptions provided by Employer's vocational expert and concluded that Claimant was physically capable of doing all four jobs.

Employer presented the testimony of Julie Stratton, a certified vocational rehabilitation counselor, who was accepted as an expert in vocational rehabilitation. On May 26, 2016, Stratton did a vocational evaluation of Claimant. Stratton reported that Claimant was 64 years old and held a high school diploma as well as an "Associate's diploma." Stratton Deposition, 1/26/2017, at 22; R.R. 91a. Claimant had served in the military for four years and then worked as a plant manager and a chemical operator from 1977 to 1985. From 1985 to 2011, he worked for Employer. Stratton determined that Claimant had transferable skills that included operation control and monitoring; critical thinking; quality control analysis; active listening; judgment; and decision making.

Stratton found Claimant employable. Because Employer did not have any light-duty jobs available, Stratton looked for open and available positions that met the physical restrictions set by Dr. Okin. She found positions vocationally suitable for Claimant through "our job bank of positions" at Hoover Rehabilitation Services, Inc., where Stratton worked. *Id.* at 63; R.R. 132a. Stratton also did an internet search for jobs within a 25 to 30- mile radius of Claimant's home but found nothing suitable.

On June 14, 2016, Stratton sent a letter to Claimant that identified two positions: a dispatcher at Blue Ridge Communications and a customer service position at PenTeleData. Both were sedentary, entry-level positions that offered on-

---

[2] On January 27, 2016, Employer issued Claimant a notice of ability to return to light-duty work. R.R. 169a.

the-job training. Stratton's letter stated that both employers required an in-person application and instructed Claimant to apply for both jobs by June 21, 2016.

On July 20, 2016, Stratton sent a second letter to Claimant, informing him that cashier positions were available with HMS Host and A Pawn Plus. The position at HMS Host was light duty, and the position at A Pawn Plus was sedentary. Both were entry-level positions for which on-the-job training was available. Stratton's letter advised Claimant that he could complete the application for HMS Host online but had to apply in person for the position at A Pawn Plus. Her letter did not state an application deadline for either position. The four jobs paid between $320 and $372.50 per week.

Stratton testified that she did not know whether Claimant had applied for the positions identified in her letters of June 14, 2016, and July 20, 2016.

Claimant testified. He described his job as a chemical operator as loading chemical reactors, rotating stock, loading bulk tankers, pipefitting and welding. He managed the two to three employees that worked on his shift. His computer expertise consisted of printing instructional materials. Claimant testified that he did not interact with customers.

Claimant testified that on June 20, 2016, he applied for the two positions identified in Stratton's letter of June 14, 2016. However, neither Blue Ridge nor PenTeleData offered him a job. Claimant applied for the HMS Host cashier position online, at his local library, but he did not get the job. When he applied for the cashier position at A Pawn Plus, the store manager asked if he was fluent in Spanish. Claimant did not get the job. Claimant testified that he had no experience working as a dispatcher, a customer service representative or a cashier; he did not speak Spanish.

4

Claimant stated that his work injury continues to cause him pain.  In spite of physical therapy and a spinal block, his pain is so great that sometimes he cannot leave the house.  Claimant uses a transcutaneous electrical nerve stimulation unit (TENS Unit) throughout the day to ease the pain.  Claimant doubted that he had the physical ability to work, explaining "I attempt things, I try things, and then I pay for it later.  I'm either medicating, stretching, or I have a TENS unit where it gives me electric shock to the affected area to relieve the pain."  WCJ Hearing, Notes of Testimony (N.T.), 2/1/2017, at 29-30; R.R. 225a-26a.  Claimant testified that he did not believe he had the skills or experience to do any of the jobs Stratton identified.  Nevertheless, he stated that he would have tried the positions had he been hired.[3]

Claimant presented the testimony of Dennis L. Mohn, a certified vocational rehabilitation counselor, accepted as an expert in vocational rehabilitation.[4]  Mohn conducted a vocational assessment of Claimant on June 16, 2016, and reviewed the labor market survey done by Stratton.

At the time of Mohn's assessment, Claimant was 65 years old and had spent the previous 26 years working for Employer, a manufacturer of water sealants and ink gellants.  Claimant told Mohn that he could lift 20 pounds but could carry only 10 pounds; sit or stand five to 15 minutes at a time; walk a quarter mile; and drive for about 90 minutes.  Mohn stated that Claimant "could only occasionally climb steps.  He couldn't bend or crawl or kneel.  But he could occasionally slightly squat to try to reach the floor."  Mohn Deposition, 3/23/2017, at 19; R.R. 246a.  Mohn addressed each of the four jobs identified by Stratton.

---

[3] Separate from his work injury, Claimant has Fuchs' dystrophy, a degenerative disease of the corneal endothelium, in both eyes, which causes vision problems, particularly when reading a computer screen.

[4] He is employed by Dennis L. Mohn Consulting, Inc.

5

Based on his conversation with Blue Ridge Communications, Mohn testified that the dispatcher job required proficiency with Microsoft Office programs and the ability to work efficiently in a fast-paced environment. Essentially, the dispatcher took calls from customers with service needs and scheduled a visit from a field technician. Mohn did not believe Claimant had the necessary computer and customer service skills.

Mohn testified that the customer service job at PenTeleData required prior experience and a working knowledge of Microsoft Word, Excel and Windows. Mohn did not believe Claimant was qualified for this job, but he acknowledged that he did not test Claimant's computer skills.

Mohn testified that HMS Host operates fast food restaurants at rest stops on the Pennsylvania Turnpike. The cashier position involves food preparation and clean-up. It is an entry-level position, but HMS Host requires the candidate to demonstrate an ability to interact with the public. Mohn stated that Claimant had no relevant work experience.

Mohn testified that A Pawn Plus required prior experience as a cashier and the ability to carry up to 40 pounds. Mohn testified that Claimant had neither the necessary experience nor the physical ability to do the job.

Claimant also presented the testimony of Robert Mauthe, M.D., who is board certified in physical medicine and rehabilitation and began treating Claimant in 2012. Dr. Mauthe diagnosed Claimant with chronic back pain and an L4-5 disc herniation and radiculopathy. Dr. Mauthe prescribed anti-inflammatory medication and a TENS Unit to help Claimant with the pain.

Dr. Mauthe released Claimant to light-duty work. Dr. Mauthe opined that Claimant was capable of working eight hours a day, provided he could shift his

6

position from time to time, *i.e.*, sit, stand, and walk around. Dr. Mauthe authorized Claimant to do the dispatcher job at Blue Ridge Communications on a trial basis and believed Claimant to be physically capable of doing the customer service job at PenTeleData. Dr. Mauthe did not believe Claimant could do either the HMS Host or A Pawn Plus position because of the physical demands. The HMS Host job required bending and twisting, and the A Pawn Plus job required lifting in excess of 40 pounds. These duties exceed Claimant's physical abilities.

On cross-examination, Dr. Mauthe testified that the descriptions of the jobs at HMS Host and A Pawn Plus given to Dr. Okin were different from the job descriptions that Mohn provided to Dr. Mauthe. Specifically, the job description given to Dr. Okin for HMS Host provided that the employee could stand and walk for short periods and use a stool. The job description for A Pawn Plus provided that the employee would have a cushioned stool and not be required to lift over five pounds. Assuming those job descriptions were accurate, Dr. Mauthe testified that Claimant was physically capable of doing both jobs.

The WCJ found the testimony of Claimant and Dr. Mauthe credible. The WCJ did not address the testimony of either Mohn or Stratton and did not decide which job descriptions provided by the experts to Dr. Mauthe and Dr. Okin were accurate. Instead, the WCJ focused on whether the jobs in the labor market survey were open and available and found as follows:

> Claimant was never afforded the opportunity to perform the jobs and therefore, consistent with *Phoenixville* [*Hospital v. Workers' Compensation Appeal Board (Shoop),* 81 A.3d 830 (Pa. 2013), the WCJ] does not find the jobs were open and available to Claimant.

7

WCJ Decision at 9, Finding of Fact No. 35; R.R. 878a. On this basis, the WCJ concluded that Employer did not prove that Claimant had earning power and denied Employer's modification petition.

Employer appealed to the Board. Employer argued that the evidence established Claimant was vocationally and medically able to do the jobs identified in the labor market survey; the jobs were open and available to him; and the WCJ misapplied the holding in *Phoenixville*, 81 A.3d 830. Further, the WCJ erred in not addressing the testimony of the vocational experts on the question of whether Claimant was vocationally able to do any of the four positions identified by Stratton.

The Board agreed that the WCJ erred by not addressing the testimony of the vocational experts and acknowledged that this error "would normally warrant a remand." Board Adjudication at 7; R.R. 391a. However, Claimant had testified that he lacked the skills or experience to do the jobs, *i.e.*, they were not vocationally suitable. Because the WCJ credited this testimony, the Board held that Employer did not prove the existence of employment opportunities compatible with Claimant's skills, education, age and work experience. On this basis, the Board affirmed the WCJ. Employer petitioned for this Court's review.

**Appeal**

On appeal,[5] Employer raises two issues. First, Employer argues that the WCJ erred in denying its modification petition without addressing the testimony of the vocational experts and making credibility determinations thereon. Second, Employer argues that the Board erred in affirming the WCJ's decision, absent of

---

[5] "Our review is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed or whether constitutional rights were violated." *Smith v. Workers' Compensation Appeal Board (Supervalu Holdings PA, LLC)*, 177 A.3d 394, 400 n.4 (Pa. Cmwlth. 2018).

8

these necessary credibility determinations, solely on the basis of Claimant's testimony. Employer requests that we grant the modification petition or, in the alternative, remand to the WCJ for additional findings.

**Analysis**

In workers' compensation cases, the WCJ is the ultimate fact-finder with exclusive province over questions of credibility and evidentiary weight. *A & J Builders, Inc. v. Workers' Compensation Appeal Board (Verdi)*, 78 A.3d 1233, 1238 (Pa. Cmwlth. 2013). The WCJ may accept or reject the testimony of any witness in whole or in part. *Id.* Whether the record contains evidence to support findings other than those made by the WCJ is irrelevant; the critical inquiry is whether there is evidence to support the findings the WCJ actually made. *Furnari v. Workers' Compensation Appeal Board (Temple Inland)*, 90 A.3d 53 (Pa. Cmwlth. 2014).

Section 413 of the Act, 77 P.S. §772,[6] authorizes a WCJ to modify or suspend a claimant's benefits where the claimant has some earning power. Disability compensation is based upon the difference between a claimant's pre-injury wages and his post-injury earning power. Section 306(b)(2) of the Act

---

[6] It states, in relevant part, as follows:

> A workers' compensation judge designated by the department may, at any time, modify, reinstate, suspend, or terminate a notice of compensation payable, an original or supplemental agreement or an award of the department or its workers' compensation judge, upon petition filed by either party with the department, *upon proof that the disability of an injured employe* has increased, *decreased*, recurred, or has temporarily or finally ceased, or that the status of any dependent has changed. Such modification, reinstatement, suspension, or termination shall be made as of the date upon which it is shown that the disability of the injured employe has increased, decreased, recurred, or has temporarily or finally ceased, or upon which it is shown that the status of any dependent has changed….

77 P.S. §772 (emphasis added).

establishes how a claimant's "earning power" is to be determined, stating in relevant part, as follows:

> "Earning power" shall be determined by the work the employe is capable of performing and shall be based upon expert opinion evidence which includes job listings with agencies of the department, private job placement agencies and advertisements in the usual employment area. Disability partial in character shall apply if the employe is able to perform his previous work or can, considering the employe's residual productive skill, education, age and work experience, engage in any other kind of substantial gainful employment which exists in the usual employment area in which the employe lives within this Commonwealth. If the employe does not live in this Commonwealth, then the usual employment area where the injury occurred shall apply. If the employer has a specific job vacancy the employe is capable of performing, the employer shall offer such job to the employe. In order to accurately assess the earning power of the employe, the insurer may require the employe to submit to an interview by a vocational expert who is selected by the insurer and who meets the minimum qualifications established by the department through regulation. The vocational expert shall comply with the Code of Professional Ethics for Rehabilitation Counselors pertaining to the conduct of expert witnesses.

77 P.S. §512(2). In sum, disability benefits may be modified where the employer establishes the claimant's earning power by offering him a job or by locating appropriate positions through "expert opinion evidence." *Kleinhagan v. Workers' Compensation Appeal Board (KNIF Flexpak Corp.)*, 993 A.2d 1269, 1275 (Pa. Cmwlth. 2010) (quoting *Allied Products and Services v. Workers' Compensation Appeal Board (Click)*, 823 A.2d 284, 287 (Pa. Cmwlth. 2003)).

The employer bears the burden of proving the claimant's earning power. *Valenta v. Workers' Compensation Appeal Board (Abington Manor Nursing*

10

*Home and Rehab and Liberty Insurance Company)*, 176 A.3d 374, 384 (Pa. Cmwlth. 2017). A claimant may refute the employer's evidence by showing that the employer's labor market survey was erroneous, or that "the claimant's actual experience with the employers identified in the employer's labor market surveys" shows that the positions were not available. *Phoenixville*, 81 A.3d at 844.

With those principles in mind, we turn to Employer's appeal. It argues that the Board erred in not requiring the WCJ to assess the credibility of the two vocational experts and, instead, relying upon the subjective beliefs of Claimant to determine whether the jobs identified by Stratton were vocationally suitable. It also argues that *Phoenixville*, 81 A.3d 830, does not require that a claimant actually be offered a job, and the WCJ erred in otherwise holding. The Board agreed but affirmed on the basis of Claimant's subjective testimony even though his testimony conflicted with the testimony of the vocational experts.

Claimant responds that the testimony of the vocational experts was irrelevant because the WCJ found the jobs were not vocationally suitable for Claimant based on Claimant's credited testimony. Further, Employer's vocational expert did not testify that the jobs were still available at the time Claimant applied for them, and this was required under *Phoenixville*. Claimant argues that Employer simply failed to meet its burden of proof.

In *Phoenixville,* the employer filed a modification petition, alleging that the claimant could do sedentary work and identifying five open and available sedentary positions. The claimant applied for the jobs but was not hired. The WCJ found the claimant could do the jobs. However, because the claimant did not receive an offer of employment, the WCJ denied the modification petition. The Board affirmed, and this Court reversed the Board. We held that a claimant does not need

to be offered a job in order for the employer to meet its burden that there are open and available positions that fall within the claimant's physical limitations.

On further review, the Supreme Court agreed that a claimant does not need to be offered a job in order for the employer to establish that the claimant has earning power. However, the jobs identified by the employer must be "actually open and potentially available, not simply jobs that are already filled with existing employees." *Phoenixville*, 81 A.3d at 843. It explained that

> expert opinion evidence under Section 306(b) functions not only as a means of demonstrating that there are open jobs that exist within the claimant's limitations, but also as a mechanism for providing the claimant with notice of the existence of these jobs….

*Id*. at 844. The claimant must have a reasonable opportunity to respond to the employer's vocational evidence and be able "to present evidence regarding her or his experience with applying for the jobs identified by the employer's expert witness." *Id*. The Supreme Court remanded the matter so the claimant could submit additional evidence on whether the jobs were actually available.

In the case *sub judice*, Claimant did not contend that the jobs recommended by Employer's vocational expert were not open and available; in fact, he applied for the jobs. Stratton testified that she did not ascertain whether the jobs remained open after she sent the notices to Claimant. Under *Phoenixville*, it was Employer's burden to establish the jobs remained open for a reasonable length of time so that Claimant could apply for them. Stratton's testimony did not satisfy this burden, but other evidence in the record did. Mohn's vocational assessment report stated that the dispatcher position with Blue Ridge Communications and the customer service position with PenTeleData were still open and available on June

12

22, two days after Claimant filed his applications for those jobs. Mohn's report stated that the cashier position at A Pawn Plus remained open as of August 25. His report was silent on the HMS Host cashier position. However, Claimant's own testimony established that the positions were open and available because he applied for the positions.

The WCJ found that Claimant was not offered any of the jobs and, thus, "consistent with *Phoenixville*," the jobs were not open and available to Claimant. WCJ Decision at 9, Finding of Fact No. 35; R.R. 378a. The WCJ erred in this regard. An employer must prove the existence of gainful employment within the claimant's ability, but "an employer need not show that the claimant had obtained employment." *Phoenixville*, 81 A.3d at 842. The Board acknowledged the WCJ's erroneous understanding of *Phoenixville*.

The Board also acknowledged that where the employer offers vocational expert testimony, the WCJ must then evaluate the employer's labor market survey and accept or reject the expert's testimony and report, in whole or in part. The WCJ failed to do this in the instant case. The Board sidestepped the WCJ's omission for the stated reason that "Claimant credibly testified that the identified positions were not within his skills or experience and he would not normally have applied for them had he not been instructed to apply." Board Adjudication at 7; R.R. 391a. The Board reasoned that Claimant's testimony was sufficient to defeat Employer's claim that there were jobs suitable for Claimant.

The Board may affirm a WCJ's decision on legal reasoning that differs from that of the WCJ. *Carmen Paliotta General Construction v. Workmen's Compensation Appeal Board (Tribuzio)*, 528 A.2d 274, 277-78 (Pa. Cmwlth. 1987) (Board has "final authority to make conclusions of law" and can modify a WCJ's

13

legal conclusions). However, here, the Board erred in determining Claimant's vocational suitability solely on the basis of Claimant's testimony. Claimant's testimony was directly contradicted by Stratton's testimony that the jobs did not require prior experience and that training would be provided.

Section 422(a) of the Act states "[w]hen faced with conflicting evidence, the [WCJ] must adequately explain the reasons for rejecting or discrediting competent evidence." 77 P.S. §834. This Court has explained that the

> reasoned decision requirement does not permit a party to challenge or second-guess the WCJ's reasons for credibility determinations; determining the credibility of witnesses remains the quintessential function of the WCJ as the finder of fact.… The WCJ is free to accept, in whole or in part, the testimony of any witness…. However, the WCJ may not capriciously disregard evidence. A "capricious disregard" of evidence is a "deliberate disregard of competent evidence which one of ordinary intelligence could not possibly have avoided in reaching a result." *Leon E. Wintermyer, Inc. v. Workers' Compensation Appeal Board (Marlowe),* [] 812 A.2d 478, 487 n.12 ([Pa.]2002).

*Reed v. Workers' Compensation Appeal Board (Allied Signal, Inc.)*, 114 A.3d 464, 470 (Pa. Cmwlth. 2015) (internal citations omitted). The WCJ need not address all of the evidence, but he must "make findings necessary to resolve the issues raised by the evidence and relevant to the decision." *Green v. Workers' Compensation Appeal Board (US Airways)*, 155 A.3d 140, 148 (Pa. Cmwlth. 2017).

Here, the parties offered conflicting evidence on the physical requirements of the jobs; whether prior experience was required; and whether on-the-job training was provided. The experts offered completely different accounts about the physical and vocational requirements of each position. Dr. Mauthe testified that if the job descriptions provided to Dr. Okin were accurate, then

Claimant was physically capable of doing them. Without factual findings on the vocational skills and physical demands required in each job, the WCJ lacked the foundation for accepting Claimant's testimony that he was not vocationally or physically able to do any of the jobs identified in Employer's labor market survey.[7]

**Conclusion**

The WCJ erred in holding that Claimant had to be offered a job in order for his disability benefits to be modified. The WCJ also erred in not addressing the testimony of the vocational experts. The Board erred in its attempt to affirm on different grounds by relying on Claimant's credited opinion that the jobs were not vocationally suitable. Claimant's testimony directly conflicted with that offered by Stratton, and it was incumbent on the WCJ to resolve this conflict. In any case, the WCJ could not decide the question of Claimant's vocational suitability without resolving the conflicts in the evidence on what each position requires, physically and vocationally. Accordingly, we will vacate the Board's adjudication and remand the matter for further proceedings consistent with this opinion.

_____
MARY HANNAH LEAVITT, President Judge

---

[7] Employer argues that the subjective testimony of a claimant cannot establish whether a position is vocationally suitable, as held by the Board. If the WCJ and the Board can ignore expert evidence that there are vocationally suitable positions available to a claimant and rely solely on the claimant's self-serving opinion, then the labor market survey will be rendered meaningless. It will be impossible for an employer to modify a claimant's benefits on the basis of earning power. Stated otherwise, the Board's approach would leave employers without a clear path to establish vocational suitability. This argument is premature because there needs, first, to be a determination of what experience and skills are required for each position.

15

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Fedchem, LLC, and The State Workers  :
Insurance Fund,                     :
            Petitioners         :
                             :
           v.              :   No. 1641 C.D. 2018
                             :
Workers' Compensation Appeal Board  :
(Wescoe),                         :
          Respondent      :

# **O R D E R**

AND NOW, this 18th day of November, 2019, the order of the Workers' Compensation Appeal Board (Board), dated November 14, 2018, is hereby VACATED and the matter REMANDED to the Board with instructions to remand to the Workers' Compensation Judge to make findings in accordance with the attached opinion.

Jurisdiction relinquished.

_____
MARY HANNAH LEAVITT, President Judge